VINCENT DePASQUALE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 20641

December 7, 1990                    803 P.2d 218

[Rehearing denied March 12, 1991 and May 2, 1991]

*Thomas E. Perkins,* Carson City, for Appellant.

*Brian McKay,* Attorney General, *David F. Sarnowski,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

On February 2, 1988, Ronald Cane, appellant's cellmate, was beaten to death. Mr. Cane suffered numerous skull fractures accompanied by bleeding in and around the brain. Bruises extended all over Mr. Cane's arms, legs, and back. Additionally, a metal rod was inserted into Mr. Cane's right ear canal.

At approximately 8:30 p.m. on the night of February 2, 1988, officers responded to a fire coming out of cell A-11, appellant's cell. Appellant was ordered to step out of the cell. He complied. After the unit had been evacuated, Nurse Hanke entered the cell and discovered Mr. Cane dead on the floor.

Detective Cooper took photographs of the scene. There was an incredible amount of blood in the cell. Blood splatters were on the wall and a sea of blood was on the floor.

After the incident, Officer Bauer and Nurse Hanke heard appellant say "I am sorry Ron." Officer Bauer also heard appellant say "Ron, I am sorry I killed you."

Upon trial by jury, appellant was convicted of first degree murder and sentenced to death.

Appellant raises several issues on appeal. Considered individually or collectively, the issues do not justify interfering with the jury's decision.

Appellant first contends that it was error to deny his pre-trial motion for appointment of co-counsel. We conclude that there was no error. Appointment of co-counsel is discretionary, even in a capital case. Sechrest v. State, 101 Nev. 360, 705 P.2d 626 (1985). Denial of co-counsel is appropriate when the amount of preparation and investigation required is not unduly burdensome. *Id.* Since appellant's oral motion[1] for co-counsel took place on the day before trial was to commence, preparation and investigation were already complete.

Appellant next contends that trial counsel breached his duty of loyalty by telling the jury he was court appointed. Appellant cites King v. Strickland, 748 F.2d 1462, 1464 (11 Cir. 1984), *cert. denied,* 471 U.S. 1016 (1985), as support for his position. In *Strickland,* defense counsel attempted to distance himself from his client. *Strickland* at 1464. His closing argument served only to dehumanize his client. *Id.* This is in contrast to the present case where defense counsel merely stated "I am asked by the Court to represent Mr. DePasquale and I am privileged to do so." Unlike the defendant in *Strickland,* Mr. DePasquale was not prejudiced by trial counsel's statement. Thus, any error that may have occurred was harmless.

Appellant's third argument is that the trial court erred in admitting statements made to a correctional officer during a break between psychiatric examinations. We find that there was no error.

On August 11, 1989, Correctional Officer John Messick transported appellant to Lake's Crossing to be examined by Dr. Molde

---

[1]Counsel failed to file a written motion demonstrating the complexity of the case pursuant to the court's request.

and Dr. Henson. In between examinations, appellant looked at Officer Messick and smiled. Officer Messick smiled back and shook his head. Appellant responded by saying "It's just a game. You have to talk to each one of them differently."

No *Miranda* warnings were given on the scene. However, appellant had previously been informed of his *Miranda* rights by the court.

The court allowed the State to present appellant's statement during the rebuttal case in response to the insanity defense. The State's theory was that appellant constructed a facade of mental illness to avoid responsibility for his conduct.

Preliminarily, we note that a psychiatric examination for the limited purpose of rebutting a defendant's insanity defense does not implicate the fifth amendment. Buchanan v. Kentucky, 483 U.S. 402 (1987); *see also* Haynes v. State, 103 Nev. 309, 318, 739 P.2d 497, 503 (1987) (statement is not "incriminatory" merely because it tends to show that the defendant is sane). Thus, it is questionable whether the fifth amendment even applies to this statement. We need not reach this issue, however, as we determine that Officer Messick's action of shaking his head did not constitute a custodial interrogation. *See* Rhode Island v. Innis, 446 U.S. 291 (1980).

Appellant's next contention is that the court erred in concluding its case-in-chief. The original information, dated January 20, 1989, charged that appellant did "with malice aforethought, deliberation and premeditation, kill Ronald Cane by stabbing him with a sharp, pointed instrument, and beating him with his hands and fists, in violation of Sections 200.010 and 200.030." The amended information, dated September 14, 1989, reads exactly the same except that the words "with hands and fists" were deleted.

An indictment is sufficient if the offense is clearly and distinctly set forth in ordinary and concise language. Brimmage v. State, 93 Nev. 434, 440, 567 P.2d 54, 58 (1977). Amendments are allowed where the court makes a finding that no substantial rights of the defendant are prejudiced. *See* State v. Jones, 96 Nev. 71, 73-74, 605 P.2d 202, 206 (1980) (reversible error exists only where the variance between the charge and proof was such as to affect the substantial rights of the accused); Biondi v. State, 101 Nev. 252, 256, 699 P.2d 1062, 1064-1065 (1985) (presentation of alternate theory during closing argument was not prejudicial where defendant was able to properly prepare defense).

Appellant asserts that he was prejudiced by the amendment. At trial, appellant proffered evidence that Mr. Cane was killed with a heavy club and that appellant had no club or other weapon.[2] Appellant asserts that the State, by amending the information, changed its theory as to the means by which Cane was killed.

The record does not support appellant's contention. The district court properly found that the amended language was neither inconsistent with the defense, nor the State's case. Moreover, defense hypotheticals of sitting on top of the victim and slamming his head into the floor gave grounds to amend. We therefore conclude, that appellant was not prejudiced by the amendment.

Turning now to some of the more difficult issues, we first consider whether the evidence was sufficient as a matter of law to support a conviction of murder in the first degree.

The standard of review regarding sufficiency of the evidence is whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980).

As evidence of premeditation and deliberation, the prosecution put forth a letter written by the defendant (dated February 21, 1988) in which he said "I am immature in a lot of ways, more like a stubborn, rebellious child. I do need to learn responsibility and accountability in my life." Other than this, the only real evidence of premeditation and deliberation was the beating itself. No motive for the killing was presented.

Appellant argues that the evidence presented cannot support the jury's finding of premeditation and deliberation. We disagree. Premeditation is generally established by circumstantial evidence. Hern v. State, 97 Nev. 529, 533, 635 P.2d 278, 281 (1981). Premeditation and deliberation can be inferred from the nature and extent of the injuries, coupled with repeated blows. *Id.* Given the brutal and extensive nature of Mr. Cane's injuries (including injuries to the head, torso, ribs and back), an inference of premeditation and deliberation can be reasonably drawn. This is particularly true when considering the metal rod which was inserted deeply into the victim's ear. It is difficult to imagine such a process occurring without deliberate thought.

---

[2]Dr. Salvadorini, a pathologist, expressed an opinion that a weapon was used in the killing. Detective Brian Kennedy reached the same conclusion by analyzing the blood splatters on the wall of the cell.

Appellant asserts that his composite psychiatric history, combined with the clearly impulsive nature of the offense, negates any possibility that the offense was committed on rational deliberation of the kind thought to separate first from second degree murder. We conclude otherwise.

Several psychiatrists testified as to appellant's psychiatric condition. The consensus was that appellant suffers from both episodic psychosis[3] and a sociopathic personality disorder. The relevant question is whether appellant was acting while in a psychotic state, or whether he was merely exhibiting his sociopathic tendencies.

The jury found that some or all of the aggravating factors arose while appellant was under the influence of extreme mental or emotional disturbance. The jury declined to find, however, that appellant was under the influence of extreme mental or emotional disturbance when he murdered Ronald Cane. The jury's finding should not be disturbed if it is supported by substantial evidence.

Prison psychologist Mace Knapp testified that he had observed appellant leaving the chess club at 6:20 p.m. on February 2, 1988. Appellant appeared normal and rational. Approximately two hours later appellant was pulled out of his cell and the body of Ronald Cane was discovered. Appellant was very talkative, yet calm and co-operative. He acknowledged the presence of Officer Bauer and Sergeant Cartwright.

Defense counsel brought various inmates to testify that appellant was acting "bizarre" on the day of the incident. The jury nevertheless found the prosecution testimony persuasive. Substantial evidence supports the jury's finding. We therefore conclude, that appellant's psychiatric history does not negate the jury's finding of premeditation and deliberation.

Having concluded that appellant's psychiatric history will not negate premeditation and deliberation, we next consider whether the sentence of death is excessive, considering both the crime and the defendant.

Preliminarily, we note that the jury found two aggravating circumstances. First, the murder was committed by the defendant while under a sentence of imprisonment.[4] Second, appellant had

---

[3]Appellant has a history of psychotic episodes. On one occasion, appellant pulled his own eye out of its socket.

[4]Appellant was serving a sentence of 10 years incarceration upon a judgment of guilty for the crime of larceny from the person.

been previously convicted of a felony involving the use of violence.[5] The record supports a finding of both aggravating circumstances.[6]

The jury also found three mitigating circumstances. First, the jury found that some or all of the aggravating factors arose while the defendant was under the influence of extreme mental or emotional disturbance. Second, appellant came from a dysfunctional family. Third, appellant had a history of drug abuse.

The jury found the mitigating circumstances insufficient to outweigh the aggravating circumstances and sentenced appellant to death.

Appellant argues that the sentence is excessive because the offense had no appreciable degree of premeditation and because it was the product of mental illness. He relies principally on Haynes v. State, 103 Nev. 309, 739 P.2d 497 (1987).

In *Haynes,* this court found a sentence of death to be excessive. The killing was "crazy" and motiveless. *Haynes,* 103 Nev. at 319, 739 P.2d at 503. The offender was a mentally disturbed person lashing out irrationally, and probably delusionally, and striking a person he did not know and probably had never seen before. *Id.*

The present case is distinguishable from *Haynes.* First, the jury declined to find that appellant was acting under the influence of extreme mental or emotional disturbance at the time of the killing. Second, appellant had a criminal record, including several convictions dating back to the late 1970's.[7] And third, every psychiatrist who examined appellant concluded that he had an anti-social personality disorder. *Compare* Moran v. State, 103 Nev. 138, 734 P.2d 712 (1987) (where murders were acts of senseless and mindless violence, but where mitigating circumstances of lack of prior significant criminal history and remorse were relatively weak, sentences of death were properly imposed pursuant to NRS 200.030 and were not disproportionate to other cases involving similar circumstances).

---

[5]Appellant had been convicted of battery with use of a deadly weapon. Specifically, appellant struck Correctional Officer Campbell with an aluminum flashlight, causing head injuries, an eye injury, and cracked teeth.

[6]In order to prove the aggravating circumstances alleged against appellant, the State introduced the testimony of Officer Charles Campbell, and the amended information and judgment of conviction on the prior felony. The State also introduced certified court documents reflecting that appellant had been convicted of larceny from the person in Clark County.

[7]Contrast this to Mr. Haynes whose death sentence was based on a single aggravating circumstance which the court characterized as "a prior violent act in the form of an armed robbery committed fifteen years prior to this crime when Haynes was eighteen years old." *Haynes,* 103 Nev. at 319, 739 P.2d at 503.

In light of the brutality of the beating and appellant's significant history of criminal behavior, we determine that a sentence of death was not excessive. We further determine that the sentence was not imposed under the influence of passion, prejudice, or any arbitrary factor.

Appellant's remaining contentions are meritless. First, appellant claims that the jury was unqualified because some members of the jury were not asked if they would always vote for the death penalty. Appellant cites no authority which would require the court or counsel to ask every juror this question.

Second, appellant claims it was error to allow juror Berg to remain seated after he had been twice exposed to outside pressure to return a death sentence.[8] Juror Berg stated clearly for the record that he was not in any way prejudiced by the incidents. Defense counsel declined to object to Berg's continued participation.

Third, appellant alleges error in that a previous judgment of conviction was entered during the guilt phase of the trial. Appellant opened the door, however, to this admission. It was appellant's witness, Dr. Master, who testified regarding the assault in question and concluded that appellant may have been unable to distinguish right from wrong at that time. On rebuttal, the State then offered the judgment of conviction as evidence that appellant knowingly pled to the assault. Since appellant was found competent to enter the plea, he was presumed to be sane at the time of the commission of the offense.

Fourth, appellant argues that the district court should have heard his motion for new trial. The record reflects, however, that appellant filed his motion on September 22, 1989—eight days after the conclusion of proceedings.[9] Appellant thus missed the seven day deadline imposed by NRS 176.515(4).

Fifth, appellant contends that the testimony of Correctional Officer Campbell at the penalty hearing constituted impermissible victim impact statements under Booth v. Maryland, 482 U.S. 496

---

[8]On two occasions, fellow employees urged juror Berg to "fry the son of a bitch."

[9]The record indicates that the proceedings concluded at 11:53 p.m. on September 14, 1989.

(1987). Officer Campbell's testimony did not constitute a victim impact statement; he merely testified as to the details of the battery.

Finally, appellant argues that the prosecution should have to prove beyond a reasonable doubt that aggravating circumstances outweigh mitigating circumstances. He asserts that this court should overturn previously established case law to the contrary.[10] *See* Ybarra v. State, 100 Nev. 167, 679 P.2d 797 (1984); Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985). We decline to disturb established precedent.

For the reasons discussed above, appellant's judgment of conviction and sentence of death are affirmed.

---

[10]Under Nevada law, the State is required to prove beyond a reasonable doubt the existence of aggravating circumstances; the accused is then allowed to present evidence of mitigating circumstances. Ybarra v. State, 100 Nev. 167, 176, 679 P.2d 797, 802 (1984). *See also* Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985). The sentencing authority must then weigh whether the mitigating factors outweigh the aggravating factors; if they do not, the death penalty may be imposed. *Ybarra,* 100 Nev. at 176, 679 P.2d at 802.