Gibbons, C. J.,
with whom Parraguirre, J., agrees, dissenting:
I would affirm the judgment of conviction because I disagree with the majority’s conclusions that (1) the district court committed reversible error regarding the bifurcation jury instruction, (2) the jury misconduct requires reversal, (3) the prosecutorial misconduct contributed to cumulative error, and (4) cumulative error denied Valdez a fair trial warranting reversal.
I agree, however, with the majority’s explanation of the analysis for prosecutorial misconduct, depending on whether the misconduct is constitutional or nonconstitutional in nature.

*1199
Jury instruction regarding the separate guilt and penalty phases

The majority agrees with Valdez that the district court committed reversible error by not explicitly instructing the jury in writing, immediately prior to the guilt-phase deliberations, that it was to determine only the question of guilt. I conclude that the district court erred but that reversal is not required.
“Failure to object or to request an instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect a defendant’s right to a fair trial.”[1] The district court had no sua sponte duty in this case, and therefore, this court should review the district court’s decision not to give the instruction for plain error.[2] Further, giving an erroneous jury instruction does not require reversal unless a different result would have been likely absent the error.[3]
Although I agree with the majority that the district court erred by not giving the bifurcation instruction in writing, after the close of argument, pursuant to NRS 175.161(1), I do not think the error requires reversal. Preliminarily, Valdez did not object or offer a bifurcation instruction, so this error is not reviewable unless it was patently prejudicial.
This error was not patently prejudicial because the district court did instruct the jury on bifurcation. First, the district court told the jury during jury selection that there would be a separate penalty hearing. Second, the prosecutor explained that the jury was “not to consider the punishments” while considering guilt. Third, the district court judge responded to the jury’s penalty-phase question with a note that sentencing would not occur the same evening. Thus, on three separate occasions the jury heard that it should not consider the punishment until the separate penalty phase.
In Schoels v. State, this court held that the district court gave an improper jury instruction defining voluntary manslaughter but that reversal was unnecessary because it was unlikely the jury would have reached a different result if it had received the correct instruction.[4] In this case, the jury did receive the proper instruction regarding the separate guilt and penalty phases; it just did not receive the instruction in writing or at the close of argument. Even if the district court had given a written bifurcation instruction after closing argument, it is unlikely that the jury would have *1200 reached a different result because of the overwhelming evidence of guilt in this case. Therefore, the district court improperly failed to give a written instruction, but that failure does not constitute plain error because the jury’s result would have been the same even if the district court gave the written instruction after argument, and therefore the error did not affect Valdez’s substantial rights.[5] Accordingly, there is no basis for reversal.

The jury’s deliberation of the penalty during the guilt phase

Although I agree with the majority that the jury committed misconduct by deliberating Valdez’s penalty during the guilt-phase deliberations, Valdez cannot prove that this misconduct prejudiced him, and therefore the misconduct does not warrant reversal.
This court reviews for abuse of discretion the district court’s denial of a mistrial based on juror misconduct.[6] The district court should only grant a new trial if the defendant proves that juror misconduct occurred and that it prejudiced him.[7] The defendant can only prove the misconduct with objective evidence that does not delve into the jury’s decision-making process.[8]
The jury committed intrinsic misconduct by disobeying the district court’s oral bifurcation instruction and its response to the jury’s deliberation question.[9] Regardless, Valdez did not demonstrate with objective evidence that the jury improperly altered its guilty verdict to impose the desired penalty.[10] Valdez offers no evidence regarding how the jury reached the guilty verdict and cannot offer such evidence because it would involve the jury’s decision-making process and would likely be inadmissible.[11] Since Valdez has no evidence that the jury actually decided the guilty verdict by considering the sentence, he cannot prove that he was denied his Sixth Amendment right to an impartial jury in the guilt phase.[12]
*1201 Valdez also cannot establish that he was denied an impartial jury in the sentencing phase. I agree with the majority that the oral instructions regarding bifurcation were not sufficient as sentencing instructions. Had the jury sentenced Valdez after considering the penalty during the guilt phase, or after receiving inadequate sentencing instructions, Valdez may have been prejudiced. But that was not the case here. Valdez knowingly and voluntarily waived his right to a sentencing hearing before the jury without knowing how the jury had decided to sentence him. Thus, he cannot now complain by speculating that the jury may have improperly sentenced him when the jury did not sentence him. Regardless of the jury’s misconduct, it could not have prejudiced Valdez in the sentencing phase because he avoided that phase entirely. Thus, the jury misconduct did not violate Valdez’s Sixth Amendment right to an impartial jury in the sentencing phase. Valdez also cannot establish that the jury improperly decided the verdict based on its desired sentence or that the jury’s guilty verdict was unfair or unreliable in violation of the Eighth Amendment.[13]
Valdez cannot establish that the jury misconduct prejudiced him. Therefore, the district acted within its discretion in denying the mistrial based on jury misconduct.

Prosecutorial misconduct

I disagree with the majority’s conclusion that the instances of prosecutorial misconduct in this case contributed to cumulative error, requiring reversal.

Jury selection

The prosecution’s opening remarks during jury selection describing Valdez’s arrest as a “man hunt”

I agree with the majority that the prosecutor’s reference to a “man hunt” was improper. However, applying plain-error review, I conclude that the statement did not affect Valdez’s substantial rights because the evidence of Valdez’s guilt was overwhelming. Therefore, this misconduct does not require reversal.

The prosecution’s comment during jury selection suggesting that Valdez did not have a problem with killing kids

I agree that the prosecutor’s comment suggesting that Valdez did not have a problem with killing kids was improper, but it was not prejudicial. Applying harmless-error analysis, the prosecutor’s comment did not substantially affect the verdict because the pros *1202 ecutor made this statement early in the proceedings, during jury selection, and the jury subsequently heard overwhelming evidence that Valdez attempted to kill S.E. Further, the district court sustained the defense’s objection to this comment, instructed the jury to disregard it, and admonished the prosecutor not to do it again.[14] I therefore conclude that this error did not prejudice Valdez and does not require reversal.

The prosecution’s explanation of aggravators and the four possible punishments

I agree that the prosecutor committed nonconstitutional prosecutorial misconduct when he referred to facts that he could not prove at trial regarding the first-degree murder cases that were not capital cases and injected his personal opinion. However, I conclude that this misconduct does not warrant reversal because the error was harmless in light of the overwhelming evidence of Valdez’s guilt.

Examination of witnesses

I agree with the majority that the prosecutor violated the district court’s ruling by questioning Dr. Bittker regarding whether Valdez denied him an interview. However, the prosecutor did not flagrantly disobey the ruling.[15] The prosecutor could have reasonably believed that the defense had opened the door to the line of questioning. Moreover, the district court admonished the jury to disregard the question. Therefore, I conclude that this questioning did not prejudice Valdez and does not require reversal.

Closing argument

I agree with the majority that the prosecutor committed misconduct during closing arguments when he said that “[y]ou know what, [S.E.] should have got a knife and he should have stabbed it right into the back of — .” The district court properly sustained the defense’s objection, ordered the comment stricken, and instructed the jury to disregard it. This error was nonconstitutional and harmless in light of the overwhelming evidence of guilt.

*1203
Cumulative error

I disagree with the majority’s cumulative error analysis in this case. When evaluating a claim of cumulative error, we consider the following factors: “(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.”[16]

Evidence of guilt

I conclude that the issue of innocence or guilt was not close because the evidence of guilt was overwhelming for both the first-degree murder and attempted murder charges.

First-degree murder

Overwhelming evidence supported the jury’s conviction of Valdez for first-degree murder based on his willful, premeditated, and deliberate killing of Tilden.[17] “Willfulness is the intent to kill,” and the necessary deliberation “may be arrived at in a short period of time.”[18] Similarly, “[pjremeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing . . . [but] [i]t may be as instantaneous as successive thoughts of the mind.”[19] Additionally, a struggle between the defendant and the victim “does not preclude deliberation and premeditation [because] [i]t does not matter how short the time is before the premeditated design is carried into effect.’ ’[20]
Generally, the State proves premeditation through circumstantial evidence, including the nature and extent of the injuries.[21] For example, in DePasquale v. State, a jury convicted the appellant of the murder of his cellmate, whom he beat and stabbed to death in their cell.[22] There, the only evidence of premeditation and deliberation was the defendant’s letter, which stated that he was immature and needed to learn accountability, and the severity of the beating.[23] This court concluded that the brutal nature and extent of the injuries allowed the jury to reasonably infer premeditation and deliberation.[24]
*1204 In this case, the evidence was significantly greater than that presented in DePasquale. The following facts strongly demonstrate that Valdez committed a willful, premeditated, and deliberate murder: (1) Valdez threatened to kill Tilden if she did not stop interfering with his attempt to gather his belongings; (2) he left the apartment and returned calmly, singing or humming; (3) he stabbed Tilden, left the room to stab S.E., and then returned to continue stabbing Tilden;[25] (4) he sliced Tilden’s chin, consistent with an attempt to slice her throat; and (5) Tilden suffered a total of nine stab wounds and multiple blunt force injuries.[26] Thus, the evidence was overwhelming and the issue of guilt was not close regarding the first-degree murder charge.

Attempted murder

“ ‘[Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill.’ ”[27] NRS 193.200 provides that intent “is manifested by the circumstances connected with the perpetration of the offense.” Thus, “intent can rarely be proven by direct evidence of a defendant’s state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime.”[28] Further, the jury may infer intent to kill from the defendant’s use of a deadly weapon.[29]
Overwhelming evidence supported the jury’s verdict that Valdez intended to kill S.E. Valdez stabbed S.E. in the living room, dragged him to the kitchen, retrieved a second knife after the first knife broke off in S.E.’s body, and ran after S.E. when he fled. Additionally, one witness testified that Valdez punched and stabbed *1205 S.E. while he lay on the ground.[30] Considering these circumstances, I conclude that a rational jury could easily infer that Valdez intended to kill S.E. Thus, the evidence supporting the convictions of first-degree murder and attempted murder in this case was overwhelming, and the issue of guilt was not close.

Quantity and character of errors

As for the second factor, I conclude that the quantity and character of the errors were not great. The district court’s failure to provide an explicit written bifurcation instruction did not prejudice Valdez because the court gave a proper oral instruction and a written instruction would not have changed the verdict. The jury’s consideration of the penalty during the guilt phase was also harmless because Valdez cannot prove that the jury improperly decided his guilt and he was unaffected by the jury’s premature consideration of the sentence.
The prosecutorial misconduct also did not prejudice Valdez. Valdez objected to several of the improper comments, and the district court sustained his objections and instructed the jury to disregard the improper comments. Further, several of these errors occurred during jury selection, preceding a multiday trial, and the last error occurred during closing argument, after the jury had already heard overwhelming evidence of Valdez’s guilt.

Gravity of crime charged

As for the third factor, the crimes charged, first-degree murder with the use of a deadly weapon and attempted murder with the' use of a deadly weapon, are very grave, and therefore weigh against reversal.[31]
Having considered all three factors, I conclude that the cumulative effect of the errors does not require reversal of Valdez’s conviction given the overwhelming evidence of guilt and the gravity of the crimes.

CONCLUSION

The district court’s jury instruction error and the jury misconduct do not warrant reversal because they did not prejudice *1206 Valdez’s substantial rights. The prosecutorial misconduct also does not compel reversal because the evidence of guilt was overwhelming and Valdez’s substantial rights were not harmed by these errors. Accordingly, I would affirm the judgment of conviction.

 Flanagan v. State, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996).

 Garcia v. State, 121 Nev. 327, 334, 113 P.3d 836, 840 (2005); NRS 178.602.

 Schoels v. State, 114 Nev. 981, 986, 966 P.2d 735, 738 (1998).

 Id.

 NRS 178.602.

 Meyer v. State, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003).

 Id. at 563-64, 80 P.3d at 455.

 Id. at 563, 80 P.3d at 454.

 Id. at 561, 80 P.3d at 453 (explaining that intrinsic jury misconduct is “conduct by jurors contrary to their instructions or oaths,” such as “discussing sentencing or the defendant’s failure to testify”).

 See id. at 563, 80 P.3d at 454.

 Id. at 562-63, 80 P.3d at 454 (noting that evidence of intrinsic juror misconduct is generally inadmissible because it delves into the decision-making process of the jury).

 See Daniel v. State, 119 Nev. 498, 517, 78 P.3d 890, 903 (2003) (stating that defendants have a right to a fair trial by an impartial jury); People v. Shannon, 305 P.2d 101, 106 (Cal. Ct. App. 1956) (noting that the jury may not consider the penalty when deciding guilt).

 See Gregg v. Georgia, 428 U.S. 153, 188-89 (1976).

 See Greene v. State, 113 Nev. 157, 170, 931 P.2d 54, 62 (1997) (concluding that while a statement was “patently improper,” as the district court admonished the jury, there was no prejudice “in light of the overwhelming evidence of guilt”), overruled on other grounds by Byford v. State, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000).

 See McGuire v. State, 100 Nev. 153, 156, 677 P2d 1060, 1063 (1984) (discussing a prosecutor’s “flagrant violation” of a district court’s ruling by repeatedly mentioning the defendant’s inadmissible prior convictions to the jury).

 Mulder v. State, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

 See NRS 200.030(l)(a) (outlining the elements of first-degree murder).

 Byford, 116 Nev. at 236, 994 P.2d at 714.

 Id. at 237, 994 P.2d at 714.

 State of Nevada v. Loveless, 62 Nev. 312, 326, 150 P.2d 1015, 1021 (1944).

 DePasquale v. State, 106 Nev. 843, 848, 803 P.2d 218, 221 (1990).

 Id. at 845-46, 803 P.2d at 219.

 Id. at 848, 803 P.2d at 221.

 Id.

 See Browne v. State, 113 Nev. 305, 315, 933 P.2d 187, 193 (1997) (concluding that the jury could reasonably infer premeditation where the defendant had stopped beating the victim and then continued beating her).

 Regarding Valdez’s contention that expert testimony revealed that he did not act with premeditation, based on damage to his brain, it is the jury’s function to weigh credibility, and it may have believed the State’s expert witness who testified that Valdez’s condition did not prevent him from premeditating. See Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981) (noting that it is the jury’s function to weigh witness credibility).

 Sharma v. State, 118 Nev. 648, 652, 56 P.3d 868, 870 (2002) (quoting Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988)).

 Id. at 659, 56 P.3d at 874.

 See Dearman v. State, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977) (“Intent to kill . . . may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances.”).

 While other witnesses testified that they did not see Valdez stab and punch S.E. while he lay on the ground, it is the function of the jury, not this court, to weigh the credibility of the witnesses. See Bolden, 97 Nev. at 73, 624 P.2d at 20.

 See Leonard v. State, 114 Nev. 1196, 1216, 969 P.2d 288, 301 (1998) (holding that the evidence of guilt was sufficient, the prosecutorial and other errors were harmless, and defendant’s crimes were serious, so there was no cumulative error warranting reversal of conviction).