An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

BRYAN LEE HALL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62663

**FILED**

OCT 2 2 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

### *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction in a death penalty case. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Bryan Hall was convicted of robbing and murdering his friend and former coworker Bradley Flamm. Flamm's body was discovered under some bushes outside an emergency exit at Caesar's Palace, where he worked as a waiter. An autopsy indicated that Flamm had been beaten and strangled. His injuries included significant head lacerations, a depressed skull fracture, and two large incise wounds on his neck that damaged the carotid artery, vagus nerve, and internal jugular vein. Tip money that Flamm likely collected during his last shift at work and other personal items were missing from his body and evidence located at the scene indicated that money had been taken from him. Forensic evidence and surveillance video collected from Caesar's Palace and the Forum Shops linked Hall to the murder. Hall testified at trial that he killed Flamm but that he was provoked by derogatory remarks Flamm made about Hall's girlfriend, Melissa Paulsen. The jury did not credit his testimony, finding him guilty of first-degree murder with the use of a deadly weapon and robbery.

15-32311

The State sought the death penalty based on two aggravating circumstances: (1) Hall had been previously convicted of a felony involving the use or threat of violence (battery resulting in substantial bodily harm) and (2) the murder involved torture and/or mutilation of the victim. The prior-violent-felony aggravating circumstance was supported by evidence of Hall's 2003 conviction for beating his pregnant ex-wife. The torture/mutilation aggravating circumstance was supported by evidence of Flamm's injuries and the manner in which Hall killed him. As other evidence in aggravation, *see* NRS 175.552(3), the prosecution introduced evidence of Hall's juvenile criminal history (including a conviction for sexual battery and false imprisonment of a fourteen-year-old boy, a citation for petty larceny, a report that he was a runaway, and a physical assault on his mother) and his adult criminal history (most notably several physical altercations and a sexual assault involving his ex-wife, a violation of a temporary restraining order, and an assault against a man with whom he once had a sexual encounter). The prosecution also presented victim-impact testimony from Flamm's father, mother, grandmother, and fiancée and letters from Flamm's brothers. The witnesses described Flamm's positive character and commented on the devastation and pain they felt as a result of his death.

In mitigation, Hall presented evidence from his wife, children, and mother describing their support and desire to have a continuing relationship with him. His ex-wife described Hall's relationship with their daughter. He also presented evidence of life at Ely prison, and two fellow inmates testified about positive aspects of his character. Finally, Hall made a statement in allocution, telling the jury that no one has lived life worse than he has and that whatever the jury decided, he would use the time he has left to help people and positively influence other inmates. He also apologized for the pain he caused.

Supreme Court
OF
Nevada

(O) 1947A

The jury found both aggravating circumstances alleged, and at least one juror found the following mitigating circumstances: (1) accepted the role as father to his two stepdaughters; (2) maintained a fatherly role with his daughter after his divorce from her mother; (3) maintains a fatherly relationship with his daughter although incarcerated; (4), (5) maintains a fatherly relationship with his stepdaughters although incarcerated; (6) maintains a relationship with his mother although incarcerated; (7) wishes to maintain the role of father and husband while incarcerated; (8) wishes to maintain a relationship with his mother while incarcerated; and (9) has a mother who continues to love and support him. The jury found that the aggravating circumstances outweighed the mitigating circumstances and imposed death. This appeal followed.

*Sufficiency of the evidence*

Hall argues that the evidence is insufficient to support his first-degree murder conviction based on either of the two theories that the jury unanimously found—willful, deliberate, and premeditated murder and murder perpetrated by lying in wait.[1] To uphold the murder

---

[1]Hall also argues that insufficient evidence supports a first-degree murder conviction based on felony murder. Because, as explained below, there is sufficient evidence supporting the theories of premeditated murder and lying in wait, *see Rhyne v. State,* 118 Nev. 1, 10, 38 P.3d 163, 169 (2002); *Thomas v. State,* 114 Nev. 1127, 1145, 967 P.2d 1111, 1123 (1998), we need not address his challenge to the felony-murder theory. To the extent he challenges his robbery conviction, we conclude that sufficient evidence supports that conviction. In particular, the evidence shows that money that Flamm likely collected in tips and other personal items had been taken from him. His wallet and other personal items that were contained in his waiter's apron were found underneath bushes near his body. His pants pockets were turned inside out, blood was found on the inside of one pocket, Flamm and Hall could not be excluded as the source of blood found on a dollar bill located some distance from the crime scene,

*continued on next page . . .*

conviction, the evidence presented at trial must establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). This court must view the evidence in the light most favorable to the State, *Jackson*, 443 U.S. at 319, and must "respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts," *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996); *accord McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) ("The established rule is that it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses.").

*Willful, deliberate, and premeditated murder*

Hall argues that the prosecution failed to prove that the murder was willful, deliberate, and premeditated because the evidence, namely his testimony, shows that he became so enraged by Flamm's comments about Paulsen that he attacked Flamm in a rage.[2]

---

*. . . continued*

and Flamm's DNA was found on another dollar bill located near the crime scene.

[2]Hall argues in his opening brief that the district court erred by not admitting evidence that Flamm was under the influence of hydrocodone at the time of his death, which he claims would have explained why Flamm was uninhibited and uttered the remarks that provoked the fight. However, Hall concedes in his reply brief that the district court admitted evidence showing that hydrocodone was present in Flamm's body.

 

We have observed that "[g]enerally, the State proves premeditation through circumstantial evidence, including the nature and extent of the injuries." *Valdez v. State*, 124 Nev. 1172, 1203, 196 P.3d 465, 485-86 (2008). Here, Hall slammed Flamm's head against the patio several times, used a knife that he brought to the scene to stab and slice Flamm's neck multiple times, struck the back of Flamm's head with the lid from a five-gallon paint bucket, and strangled Flamm. The nature and extent of Flamm's injuries support an inference that the killing was willful, deliberate, and premeditated. *See DePasquale v. State*, 106 Nev. 843, 848, 803 P.2d 218, 221 (1990) (upholding finding of premeditation considering the "brutal and extensive nature" of victim's injuries, which defendant inflicted by stabbing victim with sharp, pointed instrument and beating victim with his hands and fists). Although the extensive injuries could suggest some level of passion or rash impulse, other evidence suggests the contrary. In particular, during the attack, Hall left the scene, grabbed a rock, returned to the scene, and continued to beat Flamm. This break in the attack further supports an inference of deliberation and premeditation. *See Browne v. State*, 113 Nev. 305, 315, 933 P.2d 187, 193 (1997) (concluding that evidence showing that defendant briefly stopped beating victim and then resumed beating and continued beating after victim stopped moving was sufficient to support finding of premeditation). The jurors heard Hall's testimony, and it was within their exclusive province to determine his credibility and what weight to give his testimony. Because there was evidence from which the jury could reasonably infer that the killing was willful, deliberate, and premeditated, Hall's argument lacks merit.

*Lying in wait*

Hall argues that insufficient evidence supports a finding that the murder was committed by lying in wait. He points to his testimony that he was waiting on the patio hoping that an acquaintance would show up and give him a ride home and argues that the prosecution presented no evidence suggesting that he was waiting there to harm Flamm.

"'The elements necessary to constitute lying in wait are watching, waiting, and concealment from the person killed with the intention of inflicting bodily injury upon such person or of killing such person.'" *Moser v. State*, 91 Nev. 809, 813, 544 P.2d 424, 426 (1975) (quoting *People v. Atchley*, 346 P.2d 764, 772 (1959)). We conclude that the evidence is sufficient to support a lying-in-wait theory. In particular, video evidence shows Hall milling around for a considerable time in the area where employees from various restaurants typically exited the building after their shifts, near where Flamm's body was found. In addition, the evidence showed that Hall could have arranged other transportation home and was carrying a knife. The jury could reasonably infer from this evidence that he was waiting for Flamm with the intent to inflict bodily harm or kill him.

*Evidence related to the victim*

Hall argues that the district court erred by not allowing him to introduce evidence that Flamm was the kind of person who made inappropriate comments, which would have corroborated his theory of defense that Flamm made an offensive comment that sent him into a rage.

At trial, Hall represented that a co-worker of Flamm's would testify that "he was the kind of guy who could make a smart aleck comment that might be considered inappropriate." He argued that the testimony was admissible on several grounds, including that it was proper character evidence under NRS 48.045(1)(a), (b). Evidence of a person's

character or a particular character trait is inadmissible to show that the person acted in conformity therewith on a particular occasion except in one circumstance relevant here: "Evidence of the character or a trait of character of the victim of the crime offered by an accused . . . and similar evidence offered by the prosecution to rebut such evidence." NRS 48.045(1)(b). Hall's defense was that Flamm provoked the attack by making a highly offensive comment about Paulsen. Evidence suggesting Flamm had a reputation for making "smart aleck comment[s] that might be considered inappropriate" does not clearly equate to a character trait of making the kind of offensive or provocative comments that Hall claims provoked him into a fit of rage. *See Roseberry v. State*, 553 S.E.2d 589, 591 (Ga. 2001) ("Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered."). But even assuming that the evidence met this requirement and therefore was admissible under NRS 48.045(1)(b), no prejudice resulted from the district court's ruling for two reasons. First, Flamm's fiancée testified on cross-examination that Flamm sometimes made inappropriate comments in an effort to be funny, so the jury heard testimony similar to what was excluded and from someone very close to Flamm. Second, because the evidence overwhelmingly supports a finding of first-degree murder and the jury rejected lesser offenses based on Hall's testimony, the omission of the co-worker's testimony did not have a substantial and injurious effect in determining the jury's verdict. *See Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (reviewing nonconstitutional error to determine whether error "had substantial and injurious effect or influence in determining the jury's verdict").

*Future dangerousness evidence*

Hall contends that the district court erred by allowing the prosecution to introduce psychological evidence to support its claim of future dangerousness.

At the penalty hearing, Hall objected to the prosecution's anticipated introduction of psychological reports prepared during Hall's juvenile detention as a result of his conviction for sexual battery and false imprisonment of a 14-year-old boy. He argued that anything in those records that purported to predict his future dangerousness was inadmissible under *Redmen v. State*, 108 Nev. 227, 234, 828 P.2d 395, 400 (1992) (concluding that prosecution was permitted to introduce evidence and make argument regarding defendant's future dangerousness but that "psychiatric evidence purporting to predict the future dangerousness of a defendant is highly unreliable and, therefore, inadmissible at death penalty sentencing hearings"), *overruled on other grounds by Alford v. State*, 111 Nev. 1409, 906 P.2d 714 (1995), and *Greene v. State*, 113 Nev. 157, 179, 931 P.2d 54, 68 (1997) (reaffirming Redmen). The psychological evidence at issue in *Redmen* and *Greene* appears to have been prepared for use at trial, whereas the psychological reports at issue here were prepared many years ago for a juvenile court's evaluation of Hall's progress with psychological issues and determination as to whether he was suitable for release from juvenile detention. The evidence at issue here does not implicate the concerns about reliability expressed in *Redmen* and *Greene* because nearly eight years have passed since the last evaluation and Hall's conduct during that time, which includes Flamm's murder and multiple instances of violence, provides a basis for evaluating the reliability of the prior evaluations. Accordingly, we conclude that no relief is warranted on this claim.

*Absence of jury admonishment*

Hall argues that the district court erred by not sua sponte instructing the jury to disregard the penalty hearing testimony from Flamm's fiancée, wherein she asked the jurors to put themselves in the shoes of the victim's family. Out of the jury's presence, Hall objected to the witness's remark and the district court sustained the objection, but Hall did not request a curative instruction or other relief. Hall has not preserved this issue for our review, *see Rice v. State*, 113 Nev. 1300, 1311, 949 P.2d 262, 269 (1997), *abrogated on other grounds by Rosas v. State*, 112 Nev. 1258, 147 P.3d 1107 (2006), nor has he shown that the isolated remark prejudiced him, *Leonard v. State*, 114 Nev. 1196, 1213, 969 P.2d 288, 299 (1998).

*Prosecutorial misconduct*

Hall points to four comments during the penalty hearing closing argument that he claims amount to prosecutorial misconduct. Because he did not object to any of the challenged comments below, we review the comments for plain error affecting his substantial rights. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008).

First, Hall argues that the prosecutor "attacked" him for testifying to his account of the events that would support a verdict of voluntary manslaughter.[3] Arguably, the challenged comments chastised

---

[3]Hall challenges the following passage from the prosecutor's rebuttal closing argument:

> Let me talk about the character of the defendant
> in the context of the most important part of this
> case, Brad Flamm. You heard unequivocally and
> from many witnesses about Brad Flamm's
> character and personality. Yet what cannot be
> lost in your decision, and what's so patently

*continued on next page . . .*

 

Hall for testifying to a fictional account of the murder that was intended to be traumatic or hurtful to Flamm's family, who were present in the courtroom. But even if the comments fell outside the bounds of permissible argument, we conclude that the error was not so egregious as to constitute plain error affecting Hall's substantial rights.

Second, Hall contends that the prosecutor improperly argued for a death sentence because Hall admitted killing Flamm but did not show sufficient remorse. The challenged comments suggested to the jury that Hall's claims of remorse were not credible in light of his lengthy history of violence against family members, his ex-wife, a 14-year-old boy, and a man with whom he once had a sexual encounter, all of which showed a level of callousness and indifference unbefitting of a life-without-parole sentence. Because Hall placed his remorse at issue by apologizing for his actions and the prosecutor's argument merely challenged the

---

*. . . continued*

obvious but never stated in the arguments before you this morning is that man, the defendant took that stand under oath and told you this:

Brad came up to him, his face lit up, and then he said, "Come over here. I have something serious to tell you. Are you sure it's your kid? I fucked her so good I thought she'd never get over me. I fucked her so good she should have had twins."

That wasn't something that happened in the past. That's not something that he did to his family, to his mother, to his wife, to his girlfriend. He did that in this courtroom to you in front of the Flamm family. Think about that, about the character of the defendant.

sincerity of that remorse, we are not convinced that the challenged comments were improper. Therefore, Hall has not shown plain error.

Third, Hall argues that the prosecutor improperly argued that justice required a death sentence in this case, implying that the jury had a duty to return the harshest punishment. It would be improper for the prosecutor to argue that the jury had a duty to return a death sentence. *See Evans v. State*, 117 Nev. 609, 633, 28 P.3d 498, 515 (2001) (observing that prosecutor cannot suggest that jury has duty to decide in particular way); *see also United States v. Mandelbaum*, 803 F.2d 42, 44 (1st Cir. 1986). But the prosecutor made no such argument here. Instead, the prosecutor merely argued that some cases, like this one, deserve the harshest available sentence. As we observed in *Williams v. State*, 113 Nev. 1008, 1022, 945 P.2d 438, 446 (1997), *amended on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), "the prosecutor is permitted to argue that the only appropriate penalty is death." Accordingly, Hall has not demonstrated plain error.

Fourth, Hall contends that the prosecutor improperly engaged in a variation of the holiday argument by suggesting that Flamm's family will never enjoy phone calls and letters from Flamm. We have held that "arguments that a family will have no more holidays with the murder victim" are improper because they serve no purpose other than to arouse the jurors' emotions and "encourage [them] to impose a sentence under the influence of passion." *Hernandez v. State*, 118 Nev. 513, 526, 50 P.3d 1100, 1109 (2002); *see Williams v. State*, 103 Nev. 106, 109, 734 P.2d 700, 702 (1987). Although Flamm's father's testimony that he will miss Flamm's weekly phone calls may evoke sympathy or compassion, references to phone calls and letters are unlikely to arouse the heightened emotions that concerned this court regarding holiday arguments. Accordingly, Hall has not shown plain error.

## Mitigation instruction

Hall contends that the district court erred by instructing the jury that it would hear evidence about mitigating circumstances relative to the offense, improperly suggesting that mitigating circumstances *must* relate to the offense. His complaint relates to instruction 7, which advised, "In the penalty hearing, evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, and any other evidence that bears on the Defendant's character." Because Hall did not object to the instruction, this claim is reviewed for plain error affecting his substantial rights. NRS 178.602; *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

Jury instructions must be read together, not judged in isolation. *See Greene v. State*, 113 Nev. 157, 167-68, 931 P.2d 54, 61 (1997), *receded from on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000); *accord Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). In addition to the challenged instruction, the jury was told that "[m]itigating circumstances are those factors which, while they do not constitute a legal justification or excuse for the commission of the offense in question, may be considered, in the estimation of the jury, in fairness and mercy, which might serve as a basis for a sentence less than death" and that the jury "must consider any aspect of the Defendant's character or record and any of the circumstances of the offense that the Defendant proffer[s] as a basis for a sentence less than death." That instruction advised the jury that it had to consider Hall's proffered mitigating circumstances and acknowledged the breadth of circumstances that may be considered in mitigation. And, notably, the instructions in this case did not use the "moral culpability" language recently addressed by this court in *Watson v. State*, 130 Nev., Adv. Op. 76, 335 P.3d 157 (2014); rather, the

SUPREME COURT
OF
NEVADA

(O) 1947A

instructions used in this case are similar in substance to language that we suggested in *Watson*, 335 P.3d at 174 n.9.

In addition to considering the jury instructions together, we must also consider the totality of the proceeding in evaluating the effect of the challenged instruction. *See Cupp*, 414 U.S. at 147 (explaining that evaluating the effect of an instruction involves consideration of all of the instructions and the related components of the proceeding, such as testimony of witnesses, argument of counsel, and receipt of exhibits in evidence). Here, it is not reasonably likely that the jury thought that it could not consider the mitigation evidence that had been presented, most of which focused almost exclusively on Hall's character and background. The jury's verdict further supports the conclusion that the challenged instruction by itself did not so infect the entire penalty hearing with a misunderstanding of the scope of mitigation evidence that the resulting death sentence violates due process. In particular, all nine mitigating circumstances found in this case related to Hall's relationships with his daughter, stepdaughters, wife, and mother, demonstrating that the jurors understood the broad scope of mitigation.

Considering all of the instructions related to mitigation and the totality of the penalty proceeding, we conclude that Hall has not demonstrated plain error with respect to instruction 7 given during the penalty hearing.

*Torture/mutilation aggravating circumstance*

Hall argues that insufficient evidence supports the torture/mutilation aggravating circumstance. *See* NRS 200.033(8). In this, he argues that "all three alleged acts—pounding Flamm's head against the concrete, hitting his head with a knife, and slitting his throat with a knife—were intended to kill Flamm," and did not suggest a sadistic intent to cause harm beyond the act of killing itself. He further notes that

Flamm was a "much larger man" and he "was caught up in the passion of the moment and was trying to kill a powerful opponent."

Addressing the torture aspect first, we have said that torture requires an intent to inflict pain beyond the killing itself. *See Domingues v. State*, 112 Nev. 683, 702 n. 6, 917 P.2d 1364, 1377 n. 6 (1996). We have upheld an aggravating circumstance based on torture where numerous stab wounds were inflicted on the victims. *E.g., Wesley v. State*, 112 Nev. 503, 515, 916 P.2d 793, 801 (1996) (concluding that defendant tortured victims by stabbing father 18 times, chipping father's skull, and stepmother 36 times). *But see Chappell v. State*, 114 Nev. 1403, 1410, 972 P.2d 838, 842 (1998) (concluding that insufficient evidence supported aggravating circumstance of depravity of mind and torture where victim was severely beaten and stabbed 13 times). Here, Hall inflicted numerous blunt force blows to Flamm's head with a rock and paint bucket lid and by slamming Flamm's head against concrete—resulting in a depressed skull fracture and a collapsed right eye. Hall inflicted three significant stab wounds to Flamm's neck and strangled him. Flamm also suffered a fracture of his thyroid cartilage, multiple bruises, and lacerations to his face. Hall testified that after slamming Flamm's head against the patio several times, he believed that Flamm was dead but continued to beat, strangle, and stab him. He also testified (consistent with the video evidence) that he left the scene during the attack, walked some distance, picked up a rock, returned to the scene and beat Flamm with the rock. We conclude that based on this evidence a rational juror could reasonably find that Hall intended to inflict pain beyond the killing itself.

As to mutilation, that requires something beyond the act of killing and means to cut off or permanently destroy a limb or essential part of the body or to cut off or alter radically so as to make imperfect, *Smith v. State*, 114 Nev. 33, 39, 953 P.2d 264, 267 (1998); *Browne v. State*,

SUPREME COURT
OF
NEVADA

(O) 1947A

14

113 Nev. 305, 316, 933 P.2d 187, 193 (1997). We have upheld this aggravating circumstance where the victims have suffered stab wounds that radically altered an essential body part, *see McConnell v. State*, 120 Nev. 1040, 1070-71, 102 P.3d 606, 625 (2009) (concluding that mutilation aggravating circumstance was proved where defendant dug into victim's torso/abdomen with knife and then plunged knife into it because those actions went beyond the act of killing and caused serious abuse that altered radically essential part of body), and where multiple forces were used to kill or mutilate the victim, *see Parker v. State*, 109 Nev. 383, 395, 849 P.2d 1062, 1070-71 (1993) (sufficient evidence of mutilation and depravity of mind where defendant repeatedly smashed victim's head with a rock, destroying her brain, stabbed her once (post-mortem), and wrapped cords around her neck). Flamm suffered multiple blunt force blows to his head with a rock and paint bucket lid and having his head slammed against concrete—resulting in a depressed skull fracture and a collapsed right eye. He also suffered three significant stab wounds to the neck, fracture of his thyroid cartilage, and multiple bruises and lacerations to his face. His lip was almost torn off by blunt force. The medical evidence suggests that Flamm's face and head were damaged, and Flamm's father testified that Flamm was cremated rather than buried considering the condition of his body. We conclude that based on this evidence a rational juror could reasonably find that Hall's actions went beyond the killing itself and altered radically Flamm's head and neck, which are essential parts of the body.

*Mandatory appellate review of the death sentence*

NRS 177.055(2) requires that we review every death sentence and consider whether (1) sufficient evidence supports the aggravating circumstances found, (2) the verdict was rendered under the influence of

SUPREME COURT
OF
NEVADA

(O) 1947A

15

passion, prejudice, or any other arbitrary factor, and (3) the death sentence is excessive.

First, the jury found two aggravating circumstances—(1) Hall had a prior-violent-felony conviction based on his conviction for battery with substantial bodily harm and (2) the murder involved torture and/or mutilation. The aggravating circumstances were proven beyond a reasonable doubt by evidence that Hall had a prior conviction for battery with substantial bodily harm and by evidence regarding Flamm's injuries and the manner in which Hall killed him.

Second, nothing in the record indicates that the jury acted under any improper influence in imposing death. Of particular relevance, at least one juror found several mitigating circumstances related to Hall's relationships with his daughters and mother, which was the cornerstone of his mitigation case. We therefore conclude that the death sentence was not imposed under the influence of prejudice, passion, or any arbitrary factor.

Third, when considering whether the death sentence is excessive, this court asks whether "the crime and defendant before [the court] on appeal [are] of the class or kind that warrants the imposition of death?" *Dennis v. State*, 116 Nev. 1075, 1085, 13 P.3d 434, 440 (2000). The evidence shows that Hall inflicted trauma to Flamm's head using multiple instruments. He ceased the attack, retrieved a rock some distance from the scene, and returned to continue the attack. Much of the trauma Hall inflicted was done after he believed that Flamm was dead. Additionally, Hall has a significant history of violent offenses or encounters as a juvenile and adult. Considering the circumstances of the offense, Hall's violent history, and the mitigating evidence, we conclude that the crime and the defendant are of the class and kind that warrant

 

the imposition of the death penalty and therefore the death sentence is not excessive.

Having considered Hall's arguments and concluded that no relief is warranted, we

ORDER the judgment of conviction AFFIRMED.[4]

_____, C.J.
Hardesty

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Saitta

_____, J.
Pickering

CHERRY, J., dissenting:

I dissent. I question whether the evidence establishes that Hall committed first-degree murder in light of his testimony that his attack on Flamm was provoked. However, I acknowledge that matters of credibility rest with the jury. *See Hutchins v. State*, 110 Nev. 103, 107,

---

[4]Hall contends that cumulative error warrants reversal of his convictions and sentence. Because he has shown only one potential error—the district court's refusal to allow evidence related to Flamm's character—there is nothing to cumulate. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) ("If there are no errors or a single error, there can be no cumulative error.").

867 P.2d 1136, 1139 (1994); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). I further acknowledge that Hall has not pointed to any error that mandates reversal of the judgment of conviction. Nevertheless, I am compelled to express my view that this murder does not call for the death penalty. The United States Supreme Court has recognized that the death penalty is reserved for those defendants who are "the worst of the worst." *See Kansas v. Marsh*, 548 U.S. 163, 206 (2006) (observing that "within the category of capital crimes, the death penalty must be reserved for 'the worst of the worst'"); *Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("Capital punishment must be limited to those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution'" (quoting *Atkins v. Virginia*, 536 U.S. 304, 319 (2002))); *Furman v. Georgia*, 408 U.S. 238, 306 (1972) ("The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." (Stewart, J., concurring)); *see also Woodson v. North Carolina*, 428 U.S. 280, 296 (1976) (observing that "under contemporary standards of decency death is viewed as an inappropriate punishment for a substantial portion of convicted first-degree murderers"). All murders are horrible, and Flamm's murder is no exception. But that is not enough. The evidence suggests that this murder resulted from an exchange of words that spiraled out of control,

not a cold, calculated murder. On the continuum of horrific murder cases, this case does not qualify as the "worst of the worst." Therefore, I would set aside the death sentence and impose a sentence of life in prison without the possibility of parole. *See* NRS 177.055.

_____, J.
Cherry

cc:     Hon. Michelle Leavitt, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk