196 P.3d 465 (2008)
James Menor VALDEZ, Appellant,
v.
The STATE of Nevada, Respondent.
No. 49541.
Supreme Court of Nevada.
November 26, 2008.
*469 JoNell Thomas, Las Vegas; Cristalli & Saggese, Ltd., and Michael V. Cristalli, Las Vegas, for Appellant.
Catherine Cortez Masto, Attorney General, Carson City; David J. Roger, District Attorney, James Tufteland, Chief Deputy District Attorney, and William D. Kephart, Deputy District Attorney, Clark County, for Respondent.
BEFORE THE COURT EN BANC.

OPINION
By the Court, HARDESTY, J.
A jury convicted appellant James Valdez of first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon. Contrary to constitutional and statutory procedures requiring a separate penalty trial, when the jury returned *470 the guilty verdict, it also announced that it had decided the sentence. Valdez subsequently agreed to waive his right to a penalty hearing. He stipulated to a sentence of life without the possibility of parole for first-degree murder and an equal and consecutive term for the use of a deadly weapon. In this stipulation, he reserved his right to appeal the judgment of conviction. The district court then sentenced him to life in prison without the possibility of parole for first-degree murder, plus an equal and consecutive term for the use of a deadly weapon, and 96 to 240 months for attempted murder, plus an equal and consecutive term for the use of a deadly weapon, to run consecutively with the first-degree murder sentence. In this appeal from the judgment of conviction, we address four issues raised by Valdez.[1]
First, we consider whether the district court must explicitly instruct the jury, immediately prior to deliberations in a first-degree murder case, that it is to determine only the question of guilt and not deliberate on the sentence until the separate penalty phase of the proceedings. Here, the district court only instructed the jury regarding bifurcation orally, immediately after jury selection. We conclude that the district court erred by failing to instruct the jury in writing, after the close of argument, that it was not to deliberate as to Valdez's possible penalty until after the sentencing hearing.
Second, we consider whether the jury acted improperly by deliberating the penalty while deciding the issue of guilt and, if so, whether the district court abused its discretion in denying a motion for a mistrial based on this jury misconduct. We hold that the jury disobeyed the district court's oral instruction and therefore committed misconduct. We further conclude that this misconduct deprived Valdez of his constitutional rights, and the district court, therefore, abused its discretion in denying a mistrial based on this misconduct.
Third, we consider whether numerous alleged acts of prosecutorial misconduct require reversal. In doing so, we clarify the proper harmless-error analyses for prosecutorial misconduct of a constitutional and nonconstitutional dimension. We conclude that the prosecutors engaged in several instances of misconduct throughout the trial but that the individual instances of prosecutorial misconduct do not require reversal.
Finally, we consider whether cumulative error warrants reversal in this case. Although the evidence of guilt was substantial, it was not overwhelming. Considering the jury instruction error, the juror misconduct, and the prosecutorial misconduct, we conclude that these errors denied Valdez a fair trial. Therefore, we reverse and remand.

FACTS
Valdez shared an apartment with his girlfriend, Teresa Tilden, and her 12-year-old son, S.E. Early on November 8, 2004, Tilden and Valdez became involved in a heated argument. Both of them had been drinking. Tilden awoke S.E. to help calm Valdez, who said that he was leaving the apartment. The couple argued, and S.E. tried to calm Valdez down. Tilden told S.E. to get a knife, but S.E. testified that he refused to do so.
At some point, Valdez left the apartment and walked down to the parking lot. He then went back up the steps to the apartment, knocked on the door, and when no one opened the door, he went back down to the parking lot. He then walked up the steps to the apartment a second time. Witnesses testified that Valdez was calm  singing or humming  as he walked up the steps to the apartment. However, S.E. testified that when *471 Valdez reentered the apartment, he was angry and began to carry some of his belongings to the door. Tilden interfered by putting his things back where they had been. Valdez grabbed a knife from the kitchen and told Tilden to leave him alone while he gathered his belongings or else he would kill her. Tilden replied that she was not afraid of him, she continued to interfere, and then she pushed him multiple times. After Tilden turned her back to walk away, Valdez grabbed her from behind.
Valdez told a friend that when he grabbed Tilden from behind, S.E. threatened him with a knife, told him to let Tilden go, and then stabbed Valdez in the hand. While Valdez suffered a cut to his hand, a police detective testified at trial that Valdez could have accidentally cut himself because, with the amount of blood involved in a killing with multiple stabbings, conditions become slippery and the perpetrator sometimes misses, stabbing himself. S.E. testified that he never had a knife, and there was no evidence that Tilden had a knife during the altercation.
When Valdez grabbed Tilden from behind, he sliced her chin, consistent with an attempt to slash her throat. He then stabbed S.E. in the chest with an 8.5-inch blade, which broke and remained lodged in S.E.'s body. Valdez dragged S.E. into the kitchen, retrieved another knife, and continued to stab him. According to the transport nurse's testimony, in addition to the wound to his chest, S.E. suffered three puncture wounds on his right shoulder, a wound to his right neck area, and a wound to his ear.
While Valdez was stabbing S.E. in the kitchen, Tilden was screaming from the living room. In response, Valdez left S.E. lying on the kitchen floor to move toward Tilden. Later, when the police found Tilden, she was lying face-down, covered in blood, and already dead. According to the coroner's testimony, she suffered multiple blunt force injuries and a total of nine stab wounds.
When Valdez attacked Tilden, S.E., with the broken knife still lodged in his body, grabbed his shoes and fled the apartment. On his way to the main office, S.E. collapsed to the ground. Valdez, holding a knife, ran down the apartment stairs after him. Witnesses gave conflicting testimony regarding whether Valdez stabbed and punched S.E. while he was on the ground. Witnesses, however, agreed that Valdez ran after a security guard who attempted to aid S.E. Valdez did not reach the security guard but turned in a different direction.
After leaving the apartment complex, Valdez called a friend and told him that he had "screwed up" and "cut" Tilden and S.E. Valdez also said that he attempted to kill himself with the knife, but it was too dull. Later, the police found a knife and blood trail by a dumpster near the location where Valdez had called his friend.
At the crime scene, the police discovered Valdez's cellular phone number and called him. While Valdez was talking to one police officer, another officer approached him and arrested him outside the hospital.
The grand jury indicted Valdez on the following three counts: (1) first-degree murder with the use of a deadly weapon for the death of Tilden, (2) attempted murder with the use of a deadly weapon for the stabbing of S.E., and (3) assault with a deadly weapon for running after the security guard. The State noticed its intent to seek the death penalty. After a four-day trial, the jury began deliberations.

Verdict and sentencing
The district court gave no written jury instruction regarding the separation of the guilt and penalty phases immediately before the jury entered deliberations and the jury had no instructions describing the various sentences that could be imposed if the jury found Valdez guilty.
During jury selection, however, the district court and the prosecutor orally explained the general procedure for the bifurcated proceedings. Nevertheless, during deliberations the jury submitted a note to the judge inquiring whether the second phase would proceed that night if the jury convicted Valdez of first-degree murder. The judge responded in writing, "NO! IT WILL NOT GO TONIGHT[.]"
*472 The jury then delivered its verdict: guilty as to one count of first-degree murder with the use of a deadly weapon, guilty as to one count of attempted murder with the use of a deadly weapon, and not guilty as to one count of assault with the use of a deadly weapon. When the district court informed the jury that it would return a different day for the penalty phase, the jury foreperson interrupted, explaining that a portion of the jury's deliberations had been devoted to the penalty, and it had already decided Valdez's sentence. The district court concluded that two separate phases were necessary and the defense needed the opportunity to present mitigating evidence. Therefore, the district court required the jury to return for the penalty phase.[2]
At the penalty hearing, the parties informed the district court that they had reached an agreement as to the sentence. Valdez accepted two consecutive life sentences without the possibility of parole, one for the murder of Tilden and one for the use of a deadly weapon. Valdez also reserved the right to appeal any issue in the case, including the procedure regarding the jury's sentence deliberations. The State reserved the right to seek all possible sentences, including the death penalty, if this court reversed the verdict. Valdez then waived his right to a penalty hearing by the jury.
Subsequently, the defense moved for a mistrial based on the assertion that the jury violated its oath by considering the penalty during the guilt phase. The district court heard arguments from both sides, denied the motion for a mistrial, and sentenced Valdez to life in prison without the possibility of parole for first-degree murder, plus an equal and consecutive sentence for the use of a deadly weapon. As to the attempted murder with the use of a deadly weapon charge, the district court sentenced Valdez to 96 to 240 months, plus an equal and consecutive term for the use of a deadly weapon, to run consecutively with count one. Valdez now appeals from the judgment of conviction.

DISCUSSION
On appeal, we discuss four of Valdez's challenges. First, Valdez argues that the district court erred by failing to instruct the jury in writing that it was not to consider sentencing during its deliberation at the conclusion of the guilt phase of the trial. Second, he argues that the jury committed misconduct, depriving him of his federal and state constitutional rights of due process, a fair trial, and a reliable sentence, when it deliberated on his sentence during the guilt phase, and therefore the district court abused its discretion in denying a mistrial based on this misconduct. Third, Valdez alleges that numerous acts of prosecutorial misconduct throughout the trial require reversal. Fourth, Valdez contends that cumulative error requires reversal. We address each of these arguments in turn.

Jury instruction regarding the separate guilt and penalty phases
Valdez argues that the district court committed reversible error by not explicitly instructing the jury, immediately prior to the guilt-phase deliberations, that it was to determine only the question of guilt. We agree.
NRS 175.552(1) requires that a district court hold a separate penalty hearing when a defendant is convicted of first-degree murder. In a first-degree murder case, an instruction "directing the jury not to involve the question of guilt with a consideration of the penalty is proper."[3] In any trial, NRS 175.161(1) requires the district court to instruct the jury at the close of argument with written instructions. The same statute precludes the district court from giving oral instructions to the jury unless the parties mutually agree to the oral instruction. If there is no record of the parties' affirmative mutual consent to an oral instruction, this court presumes objection to an oral jury instruction, even absent an actual objection.[4]
*473 In this case, the district court and the prosecutor orally advised the jury during the jury selection process regarding the bifurcated trial proceedings. In particular, the district court explained the procedure for a first-degree murder trial, detailing the different phases to determine guilt and penalty:
The procedure is as follows: And there are two phases to a death penalty case. The trial phase and the penalty phase.
If after the trial phase the [j]ury returns a verdict of guilty for first-degree murder, only first-degree murder, then we immediately proceed with that second phase, the penalty phase.
In the penalty phase, the State has the burden of proving beyond a reasonable doubt the alleged aggravators. And then they'll  then you'll be indicated what aggravators that the [j]ury must weigh.
....
So the bottom line is, to recap on this case, in other words, this could be two phases. If, and only if, the [j]ury finds [Valdez] guilty of first-degree murder, then we go into the second phase.
....
Then we'll have more evidence, more instructions, and you go out and deliberate what you think the penalty would be.
After the district court explained that there would be a separate penalty phase if the jury found Valdez guilty of first-degree murder, the deputy district attorney explained the procedure for determining punishments:
Basically, the only case, as the [c]ourt told you, that a jury decides the punishment is first-degree murder. That's the bottom line.
Anything else the [c]ourt does it.
You're going to be told you're not to consider the punishments.
At the conclusion of the guilt phase, however, neither party submitted an instruction regarding the bifurcated guilt and penalty proceedings, and the record is silent regarding why such an instruction was not given. Because the record does not demonstrate that the parties agreed to forgo a written instruction before deliberations, we presume objection to the oral jury instruction and review the district court's oral instruction for abuse of discretion or judicial error.[5]
We conclude that the district court abused its discretion by not giving the jury a written bifurcation instruction at the close of argument. Because the district court gave the instruction only during the jury selection process and not after closing arguments, the jury, over the course of the trial, could have forgotten the instruction or decided to disregard it. In fact, this is precisely what happened as evidenced by the jury's deliberation of the penalty during the guilt phase, despite the judge's note explaining that the penalty phase would not proceed the same day as the guilt phase deliberations. Further, the jury foreperson apologized, explaining, "[w]e did not know of the steps, and the procedures," indicating that the jury had, in fact, forgotten the oral instruction.
In sum, this case demonstrates that instructing the jury orally and only during jury selection regarding the separate guilt and penalty phases in a first-degree murder trial is insufficient. The instruction error directly contravened Nevada law, causing subsequent jury misconduct. Such judicial error requires that we reverse and remand.

The jury's deliberation of the penalty during the guilt phase
Valdez further contends that reversal is required because the jurors committed misconduct when they deliberated the sentence during the guilt phase of the trial. We agree.

Constitutional considerations
There are two constitutional dangers inherent in not separating the guilt and penalty *474 phases of a criminal trial. One is that the jury may make a sentencing determination without the necessary instructions and information, resulting in an arbitrary and capricious determination of capital sentences in violation of the defendant's Eighth Amendment rights.[6] The second is that the jury may improperly alter the verdict to affect the sentence, violating the defendant's Sixth Amendment right to a fair trial by an impartial jury.[7]
The United States Constitution's Eighth Amendment ban on cruel and unusual punishment requires that when the State seeks the death penalty, the trial court must take special precautions to ensure that the decision whether to impose the death penalty is not arbitrary or capricious.[8] Jurors, who typically have no sentencing experience, require careful and adequate guidance in their capital sentencing determinations, including specific and accurate information about the defendant and the crime.[9] However, much of the information jurors need to make a rational sentencing determination has no relevance to guilt or may be extremely prejudicial to the determination of guilt.[10] In addressing this concern, Nevada has determined that a bifurcated trial with separate guilt and sentencing phases is appropriate in first-degree murder cases.[11]
The second risk to the defendant's constitutional rights, if the sentencing phase is not separate from the guilt phase, is that the jury may improperly consider the penalty when deciding guilt and alter the verdict to impose a greater or lesser sentence.[12] Such jury misconduct would violate the defendant's Sixth Amendment right to a fair trial by an impartial jury.[13]
In this case, the jury deliberated and advised the court it had reached Valdez's sentence; however, the jury did not disclose the sentence. The jury did not hear specific evidence regarding Valdez or the crime, as required by the Eighth Amendment.[14] Nor did the jury hear any aggravating or mitigating circumstances, as outlined in NRS 175.552. Further, the jury was not instructed regarding the available sentences, and the district court and prosecutor's oral comments mentioning bifurcation were insufficient to instruct the jury regarding sentencing. Therefore, the jury decided Valdez's sentence without the necessary information or instructions, rendering the sentencing determination arbitrary and capricious, in violation of the Eighth Amendment.[15]
The jury misconduct also denied Valdez his Sixth Amendment right to a fair trial by an impartial jury. In Holland v. State, the Mississippi Supreme Court held that a jury's premature penalty deliberations in a capital case denied the defendant his right to a fair trial in the sentencing phase.[16] In Holland, while the trial court and counsel were preparing for the sentencing hearing outside the presence of the jury, the jury deliberated and sentenced Holland to death.[17] The judge then instructed the jury that it could not make its penalty determination until after the sentencing hearing. The sentencing hearing proceeded, and the jury sentenced Holland to death.[18] The Mississippi *475 Supreme Court reversed the conviction, holding that the judge's instruction was insufficient to cure the violation of Holland's right to a fair trial.[19] Similarly, the jury in this case prematurely deliberated Valdez's penalty. However, in this case, the misconduct was more egregious because the jury had not yet made the guilt determination, as it had in Holland.
When a juror prematurely forms an opinion in a case, the burden shifts to the defendant to change the juror's opinion, which violates the defendant's right to an impartial jury.[20] Not only is it more difficult to change a juror's premature decision, but a juror may be reluctant to change his or her opinion after disclosing it to the other jurors.[21] In this case, the jury may have determined the penalty it thought appropriate and then decided Valdez's guilt, which violates Valdez's right to a fair trial in the guilt phase. Further, if the jury had decided to sentence Valdez to death, Valdez would have had the burden to change the jury's decision, which violates Valdez's right to an impartial jury in the sentencing phase. The jury's premature sentencing decision violated Valdez's right to a fair trial and an impartial jury in both phases.

Mistrial based on jury misconduct
A jury's failure to follow a district court's instruction is intrinsic juror misconduct.[22] When the district court denies a motion for a mistrial based on such misconduct, we review the decision for an abuse of discretion.[23] "[A] new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted" from the jury misconduct.[24] The defendant must prove the nature of the jury misconduct and that there is a reasonable possibility that the misconduct affected the verdict.[25] The defendant may only prove the misconduct using objective facts and not the "state of mind or deliberative process of the jury."[26]
In this case, the jury committed misconduct by failing to follow the oral bifurcation instruction, which the court and prosecutor gave during jury selection, and the district court's written response to the jury's question about penalty deliberations. The jury foreperson's statement that the jury had decided Valdez's sentence was objective evidence of the misconduct.[27] Thus, the jury's actions constituted intrinsic jury misconduct.
There is a reasonable probability that the misconduct affected the verdict because the jury considered the penalty while deliberating Valdez's guilt.[28] In particular, the jury may have compromised, selecting the guilty verdict to impose the desired penalty. While the State argues that Valdez could not have been prejudiced because he stipulated to the sentence on the murder conviction, this argument fails to address the prejudice Valdez sustained in the jury's determination of his guilt or innocence.
In determining whether there is a reasonable probability that the juror misconduct affected the verdict, the district court must consider many factors including the timing of the misconduct, whether it involved a collateral or material issue, whether the information was admissible, and its influence in light of the entire trial.[29] In this case, the timing was critical. The jury prematurely deliberated Valdez's sentence while it was *476 determining his guilt. This conduct violated Valdez's constitutional rights. Any discussion of Valdez's penalty was material to the penalty phase only and not to the guilt phase. Because of the possibility that the jury decided Valdez's guilt by choosing its desired sentence, rather than based on the evidence, there is a reasonable probability that the jury's deliberation of Valdez's sentence while deliberating his guilt affected the verdict. The State did not prove beyond a reasonable doubt that the error did not cause Valdez prejudice.
Finally, the improper deliberations likely influenced Valdez to forgo a penalty hearing. Valdez knew that the jury found him guilty of a capital crime, but he did not know which sentence it had reached. This may have caused Valdez to fear the jury had decided on a sentence of death. The jury had not been instructed regarding sentencing. Therefore, the only sentence of which the jury would have been aware was the death penalty because it was discussed during jury selection. Thus, Valdez's stipulation to two life sentences is not surprising given that the jury misconduct could have cost him his life. Had Valdez chosen to proceed to the penalty phase, the jury misconduct may have put the burden on him to persuade the jurors to change their premature decision to sentence him to death.[30] This denied Valdez both an impartial jury to determine his guilt and an impartial jury during sentencing. The jury was not instructed regarding a sentencing range, aggravating circumstances, mitigating circumstances, or the process of weighing such circumstances. Therefore, even if the oral comments during jury selection were sufficient as a bifurcation instruction, which they were not, they were not adequate as sentencing instructions. Thus, the jury's deciding a sentence with no instructions at all was prejudicial.[31]
Because the jury misconduct violated Valdez's Eighth and Sixth Amendment rights and the district court abused its discretion in refusing to grant a mistrial, we conclude that the jury misconduct warrants reversal.

Prosecutorial misconduct
Before turning to Valdez's claims of prosecutorial misconduct, we first address the analysis to be applied when dealing with such claims. When considering claims of prosecutorial misconduct, this court engages in a two-step analysis.[32] First, we must determine whether the prosecutor's conduct was improper.[33] Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal.[34]
With respect to the second step of this analysis, this court will not reverse a conviction based on prosecutorial misconduct if it was harmless error. The proper standard of harmless-error review depends on whether the prosecutorial misconduct is of a constitutional dimension.[35] If the error is of constitutional dimension, then we apply the Chapman v. California standard and will reverse unless the State demonstrates, beyond a reasonable doubt, that the error did not contribute to the verdict.[36] If the error is not of constitutional dimension, we will reverse only if the error substantially affects the jury's verdict.[37]
We recognize that this court has not always been careful to characterize specific instances of prosecutorial misconduct as constitutional *477 or nonconstitutional error and has most often defaulted to the Chapman standard for constitutional errors when considering the harmlessness of prosecutorial misconduct.[38] Whether these distinctions make a significant difference in the ultimate analysis of harmlessness may be the subject of some debate,[39] but constitutional and nonconstitutional errors are, nonetheless, subject to different harmless-error standards.
Determining whether a particular instance of prosecutorial misconduct is constitutional error depends on the nature of the misconduct.[40] For example, misconduct that involves impermissible comment on the exercise of a specific constitutional right has been addressed as constitutional error.[41] Prosecutorial misconduct may also be of a constitutional dimension if, in light of the proceedings as a whole, the misconduct "`so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[42]
Harmless-error review applies, however, only if the defendant preserved the error for appellate review.[43] Generally, to preserve a claim of prosecutorial misconduct, the defendant must object to the misconduct at trial because this "allow[s] the district court to rule upon the objection, admonish the prosecutor, and instruct the jury."[44] When an error has not been preserved, this court employs plain-error review.[45] Under that standard, an error that is plain from a review of the record does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing "actual prejudice or a miscarriage of justice."[46] We now turn to Valdez's specific claims of prosecutorial misconduct.

Jury selection

Prosecution's opening remarks
Valdez argues that the prosecutor committed misconduct during jury selection by mentioning that there had been pretrial publicity, by referring to S.E. as a "little boy," and by describing the circumstances preceding Valdez's arrest as a "man hunt." In particular, *478 during his opening remarks, the prosecutor described the crime, explaining:
On that same day, there was a lot of press in this case because a little boy that's 12 years old got stabbed in the chest and he ran out of the apartment. He had a broken piece of the knife stuck in his chest still, and there was a little bit of a man hunt type of thing, so it was in the press.
Eventually, [Valdez] is the one that was apprehended.
(Emphases added.) Valdez suggests that these comments improperly inflamed the jury's passions against him. As the defense did not object, we apply plain-error review.
The first two comments were not improper. Since the district court may properly permit inquiry of potential jurors regarding their possible exposure to pretrial publicity,[47] we conclude that the prosecutor did not engage in misconduct by alerting the jury to the pretrial publicity. Regarding the use of the descriptor "little boy," we conclude that this was not prosecutorial misconduct because S.E. was indeed a child when he was stabbed.[48]
In contrast, the reference to a "man hunt" was improper. A prosecutor may not "blatantly attempt to inflame a jury."[49] We conclude that the use of the term "man hunt" was an attempt to inflame the jury because it was an inaccurate description of the arrest. The police merely called Valdez on his cellular phone and arrested him without resistance. Applying plain-error review, however, we conclude that the "man hunt" statement, standing alone, did not affect Valdez's substantial rights. But this statement contributed to the cumulative error in this case, which, as discussed below, requires reversal.

Prosecutor's comment suggesting Valdez did not have a problem with killing kids
Valdez argues that during jury selection, the prosecutor made a comment that offered his personal opinion, appealed to the jury's fears or passions, and disparaged Valdez. During jury selection, a potential juror stated, "Well, I just don't think they [anyone] should kill kids." The prosecutor responded, "Okay. Well, I don't think anybody in here, with maybe one exception, would ever think that they should kill kids." The district court sustained the defense's objection to this comment, instructed the jury to disregard it, and admonished the prosecutor not to do it again. The defense promptly moved for a mistrial, which the district court denied.[50] As Valdez preserved the issue for appellate review, we apply harmless-error analysis.
This court has long recognized that a prosecutor should be "`unprejudiced, impartial, and nonpartisan,'" and he should not inject his personal opinion or beliefs into the proceedings or attempt to inflame the jury's fears or passions in the pursuit of a conviction.[51] The comment in this case aroused emotions and invoked the prosecutor's personal opinion. For these reasons, we conclude that the comment was improper.
Although the comment was improper, we conclude that there was no prejudice because the district court sustained Valdez's objection and instructed the jury to disregard the comment.[52] Additionally, we conclude *479 that this improper comment did not infect the proceedings so as to impair Valdez's constitutional due process right to a fair trial.[53] Thus, we apply the harmless-error analysis for prosecutorial misconduct of a nonconstitutional dimension. In doing so, we conclude that the prosecutor's comment alone did not substantially affect the verdict because this statement was made early on in the proceedings, and there was substantial evidence that Valdez attempted to kill S.E. But this comment contributed to the cumulative error in this case, as discussed below.

Prosecution's explanation of aggravators and the four possible punishments in this case
Valdez argues that the prosecutor's explanation of aggravators and the four possible punishments during jury selection was argumentative, was not supported by the trial evidence, consisted of the prosecutor's personal opinion, and was irrelevant and prejudicial to the jury selection process. "A prosecutor has the duty to refrain from stating facts in opening statement that he [or she] cannot prove at trial."[54] Further, as noted above, a prosecutor should not inject his or her own personal beliefs and opinions.[55]
During jury selection, the prosecutor addressed the charges and possible punishments as follows:
There's two other charges here: Attempt[ed] murder and assault with a deadly weapon.
In the event you find him guilty of that, you would not be sentencing him on that. The [c]ourt decides that.
So those four punishments are the range that you would be determining, and as we've kind of alluded to, we have to prove an aggravator or multiple aggravators that are statutorily required.
....
There are a lot[ ] of first-degree murders out there that we'll never ever have the opportunity for the death sentence, and the reason why is because there's no aggravators.
The defense objected that this was not a correct statement of the law. The district court responded that the State had conveyed the general rule and instructed the parties to move on.
Although the prosecutor referred to unprovable facts regarding the first-degree murder cases, which were not capital cases, and he injected his own personal opinion, we conclude that this error was nonconstitutional because the prosecutor stated the general rule regarding the court's sentencing for attempted murder and assault and the State's burden to prove aggravators. We further conclude, however, that although this error alone would not warrant reversal, it contributed to cumulative error that requires reversal.

Examination of witnesses

Prosecution's questioning of the security guard
Valdez argues that the prosecutor improperly implied his opinion and attempted to inflame the prejudices and passions of the jury when he asked the security guard whether events would have been different if he had been armed. In particular, when the prosecutor examined the security guard about Valdez's chasing him, the prosecutor inquired, "Based on  would things have been different back then if you were armed?" The defense promptly objected, and the district court sustained the objection.
We conclude that the prosecution's question did not constitute prosecutorial misconduct and there was no prejudice because the district court sustained the defense's objection and instructed the prosecutor to move on.

*480 Prosecution's questioning of Dr. Bittker

Valdez argues that the State committed flagrant prosecutorial misconduct. The district court prohibited any suggestion that the defense prevented the State's expert witness, forensic psychiatrist Dr. Thomas Bittker, from interviewing Valdez. Valdez argues that the prosecutor disregarded this ruling.
An attorney should not flagrantly disobey a district court's ruling.[56] In McGuire v. State, the district court ruled that the prosecutor could not refer to the defendant's prior felony convictions.[57] The prosecutor improperly commented to the jury, at least twice, that it should consider the defendant's prior convictions to decide whether the defendant was guilty.[58] This court concluded that the prosecutor's "flagrant" violation was "simply intolerable."[59]
During direct examination of Dr. Bittker, the prosecutor asked him to inform the jury about his packet of information on Valdez. In his answer, Dr. Bittker stated that he was not permitted access to Valdez. The defense objected and moved to strike the answer. The district court sustained the objection and instructed the jury to disregard the comment.
During cross-examination of Dr. Bittker, defense counsel elicited testimony that while Dr. Bittker preferred to interview people before making a final assessment, he had not interviewed Valdez, which meant that the defense's expert witness, who had interviewed Valdez, had more information when he made his diagnosis. During redirect examination of Dr. Bittker, the prosecutor inquired, "You asked to do an interview with [Valdez], didn't you?" The defense objected, and the prosecutor argued that the defense brought up the issue on cross-examination. The district court sustained the objection and reminded the jury not to make any adverse inference.
We conclude that the prosecutor violated the district court's ruling, and thereby committed misconduct. This misconduct was nonconstitutional in nature but necessitated two limiting instructions from the district court, which highlighted the inference that Valdez denied Dr. Bittker an interview. Applying the proper harmless-error analysis, we conclude that this violation alone would not warrant reversal. But in conjunction with the multiple errors in this case, cumulative error warrants reversal as discussed below.

Closing argument
Valdez argues that the prosecutor committed misconduct during closing arguments by improperly injecting his opinion and attempting to inflame the prejudices and passions of the jury regarding injuries to a child. In particular, Valdez challenges the prosecutor's statement commenting on the defense's theory that S.E. stabbed Valdez in the hand, that "[y]ou know what, [S.E.] should have got a knife and he should have stabbed it right into the back of  ." The defense objected that the comment was inflammatory and should be stricken. The district court sustained the objection, ordered the comment stricken, and instructed the jury to disregard it.
We conclude that the prosecutor's comment was improper and constituted prosecutorial misconduct. This error was, however, nonconstitutional. It did not infect the trial with unfairness so as to affect the verdict and deny Valdez his constitutional right to a fair trial. We conclude that the error alone would have been harmless, but it contributed to cumulative error requiring reversal.

Cumulative error
Valdez argues that even if the previously discussed errors are harmless, together they violate his right to a fair trial. We agree.
*481 "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually."[60] When evaluating a claim of cumulative error, we consider the following factors: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged."[61] This court must ensure that harmless-error analysis does not allow prosecutors to engage in misconduct by overlooking cumulative error in cases with substantial evidence of guilt.[62]
In this case, the evidence of guilt, absent multiple errors, would have been sufficient to support Valdez's conviction. However, considering the district court's inadequate instruction to the jury-regarding bifurcation, prosecutorial misconduct, and juror misconduct, the evidence does not overcome the unfairness of the cumulative error.

Evidence of guilt
As for the first cumulative error factor, we conclude that the issue of innocence or guilt was close enough that although the evidence was sufficient to support the jury's verdict, it was not overwhelming, and therefore cannot overcome the prejudice caused by the accumulated errors.

First-degree murder
Pursuant to NRS 200.030(1)(a), a conviction of first-degree murder requires the jury to conclude that the defendant committed a "willful, deliberate and premeditated killing." "Willfulness is the intent to kill."[63] Deliberation requires a thought process and a weighing of the consequences.[64] "Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing."[65]
In this case, we conclude that although the evidence supports the jury's verdict that Valdez murdered Tilden with willfulness, premeditation, and deliberation, the evidence, particularly as to Valdez's intent, is not overwhelming for three reasons. First, Valdez and Tilden were drinking alcohol and arguing, which could support an inference of a sudden attack in anger rather than premeditation and deliberation. Second, there was conflicting testimony as to whether Valdez was calm or angry when he returned to the apartment, also calling into question his premeditation and deliberation. Third, Valdez presented expert witness testimony that he suffered from cognitive impairment that limited his ability to exercise good judgment and control his impulses. Therefore, we conclude that although there was sufficient evidence to support Valdez's conviction for first-degree murder, the evidence was not overwhelming.

Attempted murder
"`[A]ttempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill.'"[66] NRS 193.200 provides that intent "is manifested by the circumstances connected with the perpetration of the offense." Thus, "intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime."[67] Further, the jury may infer intent to kill from the manner of the defendant's use of a deadly weapon.[68]
*482 We conclude that sufficient evidence supported the jury's verdict that Valdez intended to kill S.E., but the evidence was not overwhelming. Valdez testified that S.E. threatened and stabbed him. Also, there was conflicting testimony as to whether Valdez punched or stabbed S.E. when he was lying on the ground outside of the apartment. A rational jury could infer that Valdez intended to kill S.E., but the evidence of guilt was not overwhelming.

Quantity and character of error
As for the second factor of our cumulative error analysis, we conclude that the quantity and character of the errors was substantial. The district court's failure to instruct the jury on bifurcation in writing, after the conclusion of argument, resulted in serious jury misconduct because the jury deliberated on Valdez's guilt and sentence simultaneously. This misconduct denied Valdez his Eighth Amendment right to a rational sentence not reached in an arbitrary and capricious manner and his Sixth Amendment right to a fair trial by an impartial jury in both phases. As a result of this misconduct, Valdez waived his right to a penalty hearing before the jury, possibly out of fear that the jury had predetermined a sentence of death before he had the chance to present evidence of mitigating circumstances.
The prosecutorial misconduct was also significant. The prosecutorial misconduct occurred throughout the trial, including during jury selection, while questioning an expert witness, and in closing, as discussed above. As a result, a reasonable juror could have inferred from all of these comments that Valdez resisted arrest, felt no remorse for harming S.E., and should be put to death to compensate for all the other first-degree murderers who will never be put to death. Although we agree with the dissent that each of these instances of prosecutorial misconduct, taken alone, would not have warranted reversal, we conclude that taken together and considering the other errors in this trial, the conduct denied Valdez a fair trial.

Gravity of crime charged
As for the third cumulative error factor, we conclude that the crimes charged, first-degree murder with a deadly weapon and attempted murder with a deadly weapon, are very grave. But the evidence was not overwhelming, and "[w]e cannot say without reservation that the verdict would have been the same in the absence of error."[69]
Having considered all three factors, we conclude that the cumulative effect of the errors denied Valdez a fair trial and require reversal of Valdez's conviction.

CONCLUSION
We conclude that the district court's failure to give a written instruction regarding bifurcation was an abuse of discretion. The resulting juror misconduct denied Valdez's constitutional rights and warrants reversal. Further, we conclude that the instruction error, together with the jury and prosecutorial misconduct, are cumulative error requiring reversal of Valdez's conviction. Accordingly, we reverse the judgment of conviction and remand this matter to the district court for proceedings consistent with this opinion.
We concur: MAUPIN, DOUGLAS, CHERRY, and SAITTA, JJ.
GIBBONS, C.J., with whom PARRAGUIRRE J., agrees, dissenting:
I would affirm the judgment of conviction because I disagree with the majority's conclusions that (1) the district court committed reversible error regarding the bifurcation jury instruction, (2) the jury misconduct requires reversal, (3) the prosecutorial misconduct contributed to cumulative error, and (4) cumulative error denied Valdez a fair trial warranting reversal.
I agree, however, with the majority's explanation of the analysis for prosecutorial misconduct, depending on whether the misconduct is constitutional or nonconstitutional in nature.

*483 Jury instruction regarding the separate guilt and penalty phases

The majority agrees with Valdez that the district court committed reversible error by not explicitly instructing the jury in writing, immediately prior to the guilt-phase deliberations, that it was to determine only the question of guilt. I conclude that the district court erred but that reversal is not required.
"Failure to object or to request an instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect a defendant's right to a fair trial."[1] The district court had no sua sponte duty in this case, and therefore, this court should review the district court's decision not to give the instruction for plain error.[2] Further, giving an erroneous jury instruction does not require reversal unless a different result would have been likely absent the error.[3]
Although I agree with the majority that the district court erred by not giving the bifurcation instruction in writing, after the close of argument, pursuant to NRS 175.161(1), I do not think the error requires reversal. Preliminarily, Valdez did not object or offer a bifurcation instruction, so this error is not reviewable unless it was patently prejudicial.
This error was not patently prejudicial because the district court did instruct the jury on bifurcation. First, the district court told the jury during jury selection that there would be a separate penalty hearing. Second, the prosecutor explained that the jury was "not to consider the punishments" while considering guilt. Third, the district court judge responded to the jury's penalty-phase question with a note that sentencing would not occur the same evening. Thus, on three separate occasions the jury heard that it should not consider the punishment until the separate penalty phase.
In Schoels v. State, this court held that the district court gave an improper jury instruction defining voluntary manslaughter but that reversal was unnecessary because it was unlikely the jury would have reached a different result if it had received the correct instruction.[4] In this case, the jury did receive the proper instruction regarding the separate guilt and penalty phases; it just did not receive the instruction in writing or at the close of argument. Even if the district court had given a written bifurcation instruction after closing argument, it is unlikely that the jury would have reached a different result because of the overwhelming evidence of guilt in this case. Therefore, the district court improperly failed to give a written instruction, but that failure does not constitute plain error because the jury's result would have been the same even if the district court gave the written instruction after argument, and therefore the error did not affect Valdez's substantial rights.[5] Accordingly, there is no basis for reversal.

The jury's deliberation of the penalty during the guilt phase
Although I agree with the majority that the jury committed misconduct by deliberating Valdez's penalty during the guilt-phase deliberations, Valdez cannot prove that this misconduct prejudiced him, and therefore the misconduct does not warrant reversal.
This court reviews for abuse of discretion the district court's denial of a mistrial based on juror misconduct.[6] The district court should only grant a new trial if the defendant proves that juror misconduct occurred and that it prejudiced him.[7] The defendant can only prove the misconduct with objective evidence that does not delve into the jury's decision-making process.[8]
*484 The jury committed intrinsic misconduct by disobeying the district court's oral bifurcation instruction and its response to the jury's deliberation question.[9] Regardless, Valdez did not demonstrate with objective evidence that the jury improperly altered its guilty verdict to impose the desired penalty.[10] Valdez offers no evidence regarding how the jury reached the guilty verdict and cannot offer such evidence because it would involve the jury's decision-making process and would likely be inadmissible.[11] Since Valdez has no evidence that the jury actually decided the guilty verdict by considering the sentence, he cannot prove that he was denied his Sixth Amendment right to an impartial jury in the guilt phase.[12]
Valdez also cannot establish that he was denied an impartial jury in the sentencing phase. I agree with the majority that the oral instructions regarding bifurcation were not sufficient as sentencing instructions. Had the jury sentenced Valdez after considering the penalty during the guilt phase, or after receiving inadequate sentencing instructions, Valdez may have been prejudiced. But that was not the case here. Valdez knowingly and voluntarily waived his right to a sentencing hearing before the jury without knowing how the jury had decided to sentence him. Thus, he cannot now complain by speculating that the jury may have improperly sentenced him when the jury did not sentence him. Regardless of the jury's misconduct, it could not have prejudiced Valdez in the sentencing phase because he avoided that phase entirely. Thus, the jury misconduct did not violate Valdez's Sixth Amendment right to an impartial jury in the sentencing phase. Valdez also cannot establish that the jury improperly decided the verdict based on its desired sentence or that the jury's guilty verdict was unfair or unreliable in violation of the Eighth Amendment.[13]
Valdez cannot establish that the jury misconduct prejudiced him. Therefore, the district acted within its discretion in denying the mistrial based on jury misconduct.

Prosecutorial misconduct
I disagree with the majority's conclusion that the instances of prosecutorial misconduct in this case contributed to cumulative error, requiring reversal.

Jury selection

The prosecution's opening remarks during jury selection describing Valdez's arrest as a "man hunt"
I agree with the majority that the prosecutor's reference to a "man hunt" was improper. However, applying plain-error review, I conclude that the statement did not affect Valdez's substantial rights because the evidence of Valdez's guilt was overwhelming. Therefore, this misconduct does not require reversal.

The prosecution's comment during jury selection suggesting that Valdez did not have a problem with killing kids
I agree that the prosecutor's comment suggesting that Valdez did not have a problem with killing kids was improper, but it was not prejudicial. Applying harmless-error analysis, the prosecutor's comment did not substantially affect the verdict because the prosecutor made this statement early in the proceedings, during jury selection, and the jury subsequently heard overwhelming evidence that Valdez attempted to kill S.E. Further, the district court sustained the defense's objection to this comment, instructed *485 the jury to disregard it, and admonished the prosecutor not to do it again.[14] I therefore conclude that this error did not prejudice Valdez and does not require reversal.

The prosecution's explanation of aggravators and the four possible punishments
I agree that the prosecutor committed nonconstitutional prosecutorial misconduct when he referred to facts that he could not prove at trial regarding the first-degree murder cases that were not capital cases and injected his personal opinion. However, I conclude that this misconduct does not warrant reversal because the error was harmless in light of the overwhelming evidence of Valdez's guilt.

Examination of witnesses
I agree with the majority that the prosecutor violated the district court's ruling by questioning Dr. Bittker regarding whether Valdez denied him an interview. However, the prosecutor did not flagrantly disobey the ruling.[15] The prosecutor could have reasonably believed that the defense had opened the door to the line of questioning. Moreover, the district court admonished the jury to disregard the question. Therefore, I conclude that this questioning did not prejudice Valdez and does not require reversal.

Closing argument
I agree with the majority that the prosecutor committed misconduct during closing arguments when he said that "[y]ou know what, [S.E.] should have got a knife and he should have stabbed it right into the back of  ." The district court properly sustained the defense's objection, ordered the comment stricken, and instructed the jury to disregard it. This error was nonconstitutional and harmless in light of the overwhelming evidence of guilt.

Cumulative error
I disagree with the majority's cumulative error analysis in this case. When evaluating a claim of cumulative error, we consider the following factors: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged."[16]

Evidence of guilt
I conclude that the issue of innocence or guilt was not close because the evidence of guilt was overwhelming for both the first-degree murder and attempted murder charges.

First-degree murder
Overwhelming evidence supported the jury's conviction of Valdez for first-degree murder based on his willful, premeditated, and deliberate killing of Tilden.[17] "Willfulness is the intent to kill," and the necessary deliberation "may be arrived at in a short period of time."[18] Similarly, "[p]remeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing ... [but][i]t may be as instantaneous as successive thoughts of the mind."[19] Additionally, a struggle between the defendant and the victim "does not preclude deliberation and premeditation [because] [i]t does not matter how short the time is before the premeditated design is carried into effect."[20]
Generally, the State proves premeditation through circumstantial evidence, including *486 the nature and extent of the injuries.[21] For example, in DePasquale v. State, a jury convicted the appellant of the murder of his cellmate, whom he beat and stabbed to death in their cell.[22] There, the only evidence of premeditation and deliberation was the defendant's letter, which stated that he was immature and needed to learn accountability, and the severity of the beating.[23] This court concluded that the brutal nature and extent of the injuries allowed the jury to reasonably infer premeditation and deliberation.[24]
In this case, the evidence was significantly greater than that presented in DePasquale. The following facts strongly demonstrate that Valdez committed a willful, premeditated, and deliberate murder: (1) Valdez threatened to kill Tilden if she did not stop interfering with his attempt to gather his belongings; (2) he left the apartment and returned calmly, singing or humming; (3) he stabbed Tilden, left the room to stab S.E., and then returned to continue stabbing Tilden;[25] (4) he sliced Tilden's chin, consistent with an attempt to slice her throat; and (5) Tilden suffered a total of nine stab wounds and multiple blunt force injuries.[26] Thus, the evidence was overwhelming and the issue of guilt was not close regarding the first-degree murder charge.

Attempted murder
"`[A]ttempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill.'"[27] NRS 193.200 provides that intent "is manifested by the circumstances connected with the perpetration of the offense." Thus, "intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime."[28] Further, the jury may infer intent to kill from the defendant's use of a deadly weapon.[29]
Overwhelming evidence supported the jury's verdict that Valdez intended to kill S.E. Valdez stabbed S.E. in the living room, dragged him to the kitchen, retrieved a second knife after the first knife broke off in S.E.'s body, and ran after S.E. when he fled. Additionally, one witness testified that Valdez punched and stabbed S.E. while he lay on the ground.[30] Considering these circumstances, I conclude that a rational jury could easily infer that Valdez intended to kill S.E. Thus, the evidence supporting the convictions of first-degree murder and attempted murder in this case was overwhelming, and the issue of guilt was not close.

Quantity and character of errors
As for the second factor, I conclude that the quantity and character of the errors were not great. The district court's failure to provide an explicit written bifurcation instruction *487 did not prejudice Valdez because the court gave a proper oral instruction and a written instruction would not have changed the verdict. The jury's consideration of the penalty during the guilt phase was also harmless because Valdez cannot prove that the jury improperly decided his guilt and he was unaffected by the jury's premature consideration of the sentence.
The prosecutorial misconduct also did not prejudice Valdez. Valdez objected to several of the improper comments, and the district court sustained his objections and instructed the jury to disregard the improper comments. Further, several of these errors occurred during jury selection, preceding a multiday trial, and the last error occurred during closing argument, after the jury had already heard overwhelming evidence of Valdez's guilt.

Gravity of crime charged
As for the third factor, the crimes charged, first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon, are very grave, and therefore weigh against reversal.[31]
Having considered all three factors, I conclude that the cumulative effect of the errors does not require reversal of Valdez's conviction given the overwhelming evidence of guilt and the gravity of the crimes.

CONCLUSION
The district court's jury instruction error and the jury misconduct do not warrant reversal because they did not prejudice Valdez's substantial rights. The prosecutorial misconduct also does not compel reversal because the evidence of guilt was overwhelming and Valdez's substantial rights were not harmed by these errors. Accordingly, I would affirm the judgment of conviction.
I concur: PARRAGUIRRE, J.
NOTES
[1] Valdez also challenges (1) the sufficiency of the evidence; (2) the district court's comments during jury selection; (3) the district court's admission of S.E.'s testimony regarding Valdez's instructing Tilden to discipline S.E. with the metal side of a belt; (4) the district court's instructions regarding heat of passion, intoxication and mental defect, and flight; and (5) the district court's failure to ask Valdez why he did not have two attorneys during the pretrial phase and then not appointing him a second attorney. As discussed later in this opinion, we conclude that the State presented sufficient evidence to support the jury's verdict. See Origel-Candido v. State, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We decline to reach the remaining issues because we reverse on other grounds.
[2] The jury never disclosed the sentence on which it had decided.
[3] Moore v. State, 88 Nev. 74, 75-76, 493 P.2d 1035, 1036 (1972).
[4] Harvey v. State, 78 Nev. 417, 422-23, 375 P.2d 225, 227-28 (1962) (interpreting prior version of statute).
[5] Grey v. State, 124 Nev. ___, ___, 178 P.3d 154, 163 (2008). Alternatively, we would reach the same result if we reviewed for plain error because failure to give the bifurcation instruction was patently prejudicial and the district court had a sua sponte duty to protect the defendant's right to a fair trial. Flanagan v. State, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996) (holding patently prejudicial instruction error triggers court's sua sponte duty); Garcia v. State, 121 Nev. 327, 334, 113 P.3d 836, 840 (2005) (holding that absent objection, this court reviews instruction error for plain error).
[6] Gregg v. Georgia, 428 U.S. 153, 188-93, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
[7] See People v. Shannon, 147 Cal.App.2d 300, 305 P.2d 101, 106 (1956) (noting that the jury may not consider the penalty when deciding guilt); Daniel v. State, 119 Nev. 498, 517, 78 P.3d 890, 903 (2003) (stating that defendants have a right to a fair trial by an impartial jury).
[8] Gregg, 428 U.S. at 188-89, 96 S.Ct. 2909.
[9] Id. at 190-93, 96 S.Ct. 2909.
[10] Id. at 190, 96 S.Ct. 2909.
[11] NRS 175.552(1); see Gregg, 428 U.S. at 190, 96 S.Ct. 2909.
[12] See Shannon, 305 P.2d at 106.
[13] Daniel v. State, 119 Nev. 498, 517, 78 P.3d 890, 903 (2003).
[14] Gregg, 428 U.S. at 188-93, 96 S.Ct. 2909.
[15] Id.
[16] 587 So.2d 848, 874 (Miss.1991).
[17] Id. at 872.
[18] Id.
[19] Id. at 874 (noting that it may have been sufficient for the judge to question each juror and determine that each of them remained impartial).
[20] Id. at 873.
[21] Id.
[22] Meyer v. State, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003).
[23] Id.
[24] Lane v. State, 110 Nev. 1156, 1164, 881 P.2d 1358, 1364 (1994), overruled on other grounds by Leslie v. Warden, 118 Nev. 773, 780-82, 59 P.3d 440, 445-46 (2002).
[25] Meyer, 119 Nev. at 565, 80 P.3d at 456.
[26] Id. at 563, 80 P.3d at 454.
[27] See id.
[28] See id. at 565, 80 P.3d at 456.
[29] Id. at 566, 80 P.3d at 456.
[30] See Holland v. State, 587 So.2d 848, 873 (Miss.1991).
[31] The dissent admits that the jury committed misconduct when it disregarded the oral bifurcation instruction during jury selection, but offers no explanation for the jury's decision to decide a sentence without any evidence or instructions.
[32] See U.S. v. Harlow, 444 F.3d 1255, 1265 (10th Cir.2006) ("Reviewing claims of prosecutorial misconduct entails a two-step analysis.").
[33] Id.
[34] Id.
[35] See Tavares v. State, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001); accord Harlow, 444 F.3d at 1265.
[36] 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Tavares, 117 Nev. at 732, 30 P.3d at 1132.
[37] Tavares, 117 Nev. at 732, 30 P.3d at 1132 (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)): accord Harlow, 444 F.3d at 1265.
[38] E.g., Bridges v. State, 116 Nev. 752, 764, 6 P.3d 1000, 1009 (2000) (applying the Chapman standard where the prosecutor referred to the defendant's assertion of his constitutional right not to testify); Coleman v. State, 111 Nev. 657, 664, 895 P.2d 653, 657 (1995) (applying the Chapman standard to the prosecutor's comment on the defendant's assertion of his constitutional right to post-arrest silence). But see Harris v. State, 90 Nev. 172, 173, 521 P.2d 367, 367-68 (1974) (applying the Chapman standard to alleged prosecutorial misconduct regarding presenting testimony and displaying evidence with an insufficient foundation).
[39] See Brecht v. Abrahamson, 507 U.S. 619, 643, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (Stevens, J., concurring) (observing that because both standards require the application of judgment, "the difference is less significant than it might seem").
[40] See Harlow, 444 F.3d at 1266 (noting that improper vouching for witnesses constitutes an error of nonconstitutional dimension).
[41] E.g., Chapman, 386 U.S. at 21, 24, 87 S.Ct. 824; Bridges, 116 Nev. at 764, 6 P.3d at 1009; Coleman, 111 Nev. at 664, 895 P.2d at 657.
[42] Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).
[43] See United States v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (indicating that harmless-error review applies to "nonforfeited" errors but that plain-error review applies to "forfeited" errors).
[44] Hernandez v. State, 118 Nev. 513, 525, 50 P.3d 1100, 1109 (2002). We note that in Clark v. State, this court held that even if the defendant objects to prosecutorial misconduct, "the failure to move to strike, move for a mistrial, assign misconduct or request an instruction, will preclude appellate consideration [of prosecutorial misconduct]." 89 Nev. 392, 393, 513 P.2d 1224, 1224-25 (1973). However, in Harkness v. State, this court noted that objections to the prosecutor's general line of questioning or argument are sufficient to preserve the issue for appeal under harmless-error analysis. 107 Nev. 800, 802 n. 1, 820 P.2d 759, 760 n. 1 (1991).
[45] See Green v. State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (explaining that failure to object to a jury instruction precludes appellate review except in circumstances amounting to plain error under NRS 178.602).
[46] Id.; see also Olano, 507 U.S. at 734, 113 S.Ct. 1770 ("In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.").
[47] See Leonard v. State, 117 Nev. 53, 64, 17 P.3d 397, 404 (2001) (concluding that the district court did not abuse its discretion when it refused to allow individual voir dire of all prospective jurors because "the district court ensured sufficient inquiry of the prospective jurors, including inquiry into pretrial publicity").
[48] See Johnson v. State, 122 Nev. 1344, 1356, 148 P.3d 767, 775-76 (2006) (concluding, in a capital murder case, that the terms "boys" or "kids" were not inappropriate or prejudicial descriptions for the defendant's victims, who were 17 to 20 years old).
[49] Collier v. State, 101 Nev. 473, 479, 705 P.2d 1126, 1130 (1985).
[50] The record reveals that the district court indicated that it would discuss the mistrial motion later, but the record is silent regarding further discussion.
[51] Collier, 101 Nev. at 480, 705 P.2d at 1130 (quoting State v. Rodriquez, 31 Nev. 342, 346, 102 P. 863, 864 (1909)).
[52] See Greene v. State, 113 Nev. 157, 170, 931 P.2d 54, 62 (1997) (concluding there was no prejudice when the district court sustained a defense objection to a prosecutor's "patently improper" statement and admonished the jury), overruled on other grounds by Byford v. State, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000).
[53] See id. at 169, 931 P.2d at 62 (explaining that if this court determines that the prosecutor made improper comments, this court must then determine whether the comments denied the defendant due process).
[54] Id. at 170, 931 P.2d at 62.
[55] Collier, 101 Nev. at 480, 705 P.2d at 1130.
[56] See McGuire v. State, 100 Nev. 153, 156, 677 P.2d 1060, 1063 (1984) (concluding that the prosecutor's "flagrant violation" of the district court's order, along with other improper statements, constituted prosecutorial misconduct).
[57] Id. at 156, 677 P.2d at 1063.
[58] Id.
[59] Id.
[60] Hernandez v. State, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002).
[61] Mulder v. State, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).
[62] Kelly v. State, 108 Nev. 545, 559-60, 837 P.2d 416, 425 (1992) (Young, J., dissenting).
[63] Byford v. State, 116 Nev. 215, 236, 994 P.2d 700, 714 (2000).
[64] Id.
[65] Id. at 237, 994 P.2d at 714.
[66] Sharma v. State, 118 Nev. 648, 652, 56 P.3d 868, 870 (2002) (quoting Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988)).
[67] Id. at 659, 56 P.3d at 874.
[68] See Dearman v. State, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977).
[69] Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985).
[1] Flanagan v. State, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996).
[2] Garcia v. State, 121 Nev. 327, 334, 113 P.3d 836, 840 (2005); NRS 178.602.
[3] Schoels v. State, 114 Nev. 981, 986, 966 P.2d 735, 738 (1998).
[4] Id.
[5] NRS 178.602.
[6] Meyer v. State, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003).
[7] Id. at 563-64, 80 P.3d at 455.
[8] Id. at 563, 80 P.3d at 454.
[9] Id. at 561, 80 P.3d at 453 (explaining that intrinsic jury misconduct is "conduct by jurors contrary to their instructions or oaths," such as "discussing sentencing or the defendant's failure to testify").
[10] See id. at 563, 80 P.3d at 454.
[11] Id. at 562-63, 80 P.3d at 454 (noting that evidence of intrinsic juror misconduct is generally inadmissible because it delves into the decisionmaking process of the jury).
[12] See Daniel v. State, 119 Nev. 498, 517, 78 P.3d 890, 903 (2003) (stating that defendants have a right to a fair trial by an impartial jury); People v. Shannon, 147 Cal.App.2d 300, 305 P.2d 101, 106 (1956) (noting that the jury may not consider the penalty when deciding guilt).
[13] See Gregg v. Georgia, 428 U.S. 153, 188-89, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
[14] See Greene v. State, 113 Nev. 157, 170, 931 P.2d 54, 62 (1997) (concluding that while a statement was "patently improper," as the district court admonished the jury, there was no prejudice "in light of the overwhelming evidence of guilt"), overruled on other grounds by Byford v. State, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000).
[15] See McGuire v. State, 100 Nev. 153, 156, 677 P.2d 1060, 1063 (1984) (discussing a prosecutor's "flagrant violation" of a district court's ruling by repeatedly mentioning the defendant's inadmissible prior convictions to the jury).
[16] Mulder v. State, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).
[17] See NRS 200.030(1)(a) (outlining the elements of first-degree murder).
[18] Byford, 116 Nev. at 236, 994 P.2d at 714.
[19] Id. at 237, 994 P.2d at 714.
[20] State of Nevada v. Loveless, 62 Nev. 312, 326, 150 P.2d 1015, 1021 (1944).
[21] DePasquale v. State, 106 Nev. 843, 848, 803 P.2d 218, 221 (1990).
[22] Id. at 845-46, 803 P.2d at 219.
[23] Id. at 848, 803 P.2d at 221.
[24] Id.
[25] See Browne v. State, 113 Nev. 305, 315, 933 P.2d 187, 193 (1997) (concluding that the jury could reasonably infer premeditation where the defendant had stopped beating the victim and then continued beating her).
[26] Regarding Valdez's contention that expert testimony revealed that he did not act with premeditation, based on damage to his brain, it is the jury's function to weigh credibility, and it may have believed the State's expert witness who testified that Valdez's condition did not prevent him from premeditating. See Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981) (noting that it is the jury's function to weigh witness credibility).
[27] Sharma v. State, 118 Nev. 648, 652, 56 P.3d 868, 870 (2002) (quoting Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988)).
[28] Id. at 659, 56 P.3d 868, 56 P.3d at 874.
[29] See Dearman v. State, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977) ("Intent to kill ... may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances.").
[30] While other witnesses testified that they did not see Valdez stab and punch S.E. while he lay on the ground, it is the function of the jury, not this court, to weigh the credibility of the witnesses. See Bolden, 97 Nev. at 73, 624 P.2d at 20.
[31] See Leonard v. State, 114 Nev. 1196, 1216, 969 P.2d 288, 301 (1998) (holding that the evidence of guilt was sufficient, the prosecutorial and other errors were harmless, and defendant's crimes were serious, so there was no cumulative error warranting reversal of conviction).